[No. G045721. Fourth Dist., Div. Three. June 15, 2012.]

ELAINE OLIVEIRA, Plaintiff and Appellant, v.
DAEL N. KIESLER et al., Defendants and Respondents.

#### Counsel

Law Offices of Michael Leight, Michael Leight and Michelle Leight for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Christopher A. Kanjo and Mark H. Herskovitz for Defendants and Respondents.

#### Opinion

**MOORE, J.**—A widow sued her stepsons, a law firm, a lawyer, and a paralegal, over an estate plan that purportedly divested her of the 50 percent share of the marital estate that she would have received from her husband as the surviving joint tenant of the properties they held together in joint tenancy. The estate plan served to sever all of the joint tenancies and transfer the husband's 50 percent share in the properties to a trust for the benefit of the two stepsons, to the exclusion of the widow.

Before trial, the widow settled with the stepsons. After a jury awarded the widow $200,000 in damages against the law firm, the lawyer, and the paralegal, the court reduced the award to zero. On appeal, the widow claims the court erred in making a Code of Civil Procedure section 877 offset against the jury award. She has failed to meet her burden to show error. We affirm.

### I

### FACTS

#### A. *Allegations of the Second Amended Complaint*

Elaine Oliveira (Elaine) filed a second amended complaint against Richard Neil Oliveira II (Rick) in his capacity as trustee of the Richard Neil Oliveira

Trust dated April 26, 2008 (the trust), Patrick Neil Denmark (Patrick), Citadel Law Offices and Financial Services[1] (Citadel), Dael N. Kiesler (Kiesler), and Daniel Clark Hales (Hales). In that complaint, she alleged as follows.

She was married to Richard Neil Oliveira (decedent) at the time of his death on June 28, 2008, having been married to him for more than 18 years. Rick and Patrick were decedent's sons by a prior marriage. Hales was an attorney and the owner and operator of Citadel, and Kiesler was the agent and/or employee of Hales and Citadel. (Hales, Citadel and Kiesler are hereinafter collectively referred to as the Attorney Defendants, from time to time.)

Elaine and decedent owned a number of properties as their community property. Those properties were their marital residence on DeLong Street in Cypress, California, a single-family residence on Tully Place in Cambria, California, and three undeveloped lots in Cambria. They held title to the properties in joint tenancy and it was always their mutual intention that the properties pass to the survivor of them.

Rick desired to obtain control of decedent's assets. In furtherance of this goal, he hired the Attorney Defendants to set up an estate plan for decedent.

When decedent was in failing health, Kiesler, not a lawyer, came to the residence of Elaine and decedent and recommended that each of them establish a separate trust. Kiesler did not disclose either that she was Rick's agent or that she, Hales and Citadel had a conflict of interest in representing both Elaine and decedent. Kiesler, either alone or with the assistance of Hales, prepared the trust and certain deeds, without explaining that the execution of the trust and the deeds would be to the disadvantage of Elaine. Via the three deeds, each recorded May 1, 2008, decedent severed the joint tenancies in the properties and transferred his undivided 50 percent interest in each property to the trust. The trust left all of the trust property to Rick (70 percent) and Patrick (30 percent). Had the properties not been transferred into the trust, Elaine would have acquired title to each of the properties on decedent's death as the surviving joint tenant.

The second amended complaint contained six causes of action. The first cause of action, against Rick and Patrick only, was to invalidate, rescind and nullify the trust. Elaine asserted that at the time decedent executed the trust, he did not have the requisite mental capacity to do so. She further asserted that Rick and Kiesler exerted undue influence over decedent.

The second, third and fourth causes of action were against all defendants. In the second cause of action, Elaine sought to cancel the three deeds on the

---

[1] The judgment indicates that the correct party name is Citadel Law Corporation.

basis of undue influence. She reasserted all of the facts previously alleged and further alleged, inter alia, that Rick and the Attorney Defendants acted with malice and oppression and intended to cause her injury.

In the third cause of action, Elaine sought to cancel the three deeds due to mistake. Decedent did not understand that by executing the grant deeds, he was depriving Elaine of her right of survivorship. In the fourth cause of action, Elaine sought to cancel the three grant deeds due to fraudulent concealment. She alleged that Hales and Kiesler purported to provide legal services to decedent and Elaine without disclosing that they were operating as the agents of Rick and had an irremediable conflict of interest.

The fifth cause of action was against the Attorney Defendants only, for negligence. It was based on Kiesler's practicing law without a license, Hales and Citadel's permitting the same, and Hales and Citadel's failure to provide proper legal advice to Elaine, or to disclose the conflicts of interest to her.

The sixth cause of action was against Hales and Citadel, for legal malpractice. Elaine asserted that Rick contacted Hales and Citadel to take advantage of decedent when he was seriously ill and to cheat her out of her survivorship interests in the properties.

B.   *Good Faith Settlement with Rick and Patrick*

On September 21, 2010, Elaine entered into a settlement agreement with Rick, individually and as trustee of the trust, and Patrick. Elaine agreed to dismiss her complaint against Rick and Patrick, and Rick agreed to dismiss his cross-complaint against Elaine, in consideration of the following: (1) Rick and Patrick would quitclaim their interests in the DeLong residence to Elaine, with Rick to retain a right of first refusal should Elaine choose to sell and an option to purchase should Elaine still own the property on her death; (2) the Tully Place residence would be listed for sale, with Elaine and Rick to receive one-half each of the net proceeds of sale; (3) Rick would receive the three vacant lots in fee simple and would assume all indebtedness thereon; (4) Elaine would receive a motor home, a boat, a motorcycle, and six additional vehicles; (5) Rick would receive 23 other motorcycles and vehicles; (6) Rick would receive certain tools, equipment and jewelry; (7) Elaine would receive certain antiques and the contents of the DeLong residence; (8) Elaine would release Rick and Patrick; and (9) Rick and Patrick would each release Elaine.

Rick, individually and as trustee, Patrick, and the Attorney Defendants, lodged a stipulation for determination of good faith settlement. In that stipulation, they agreed that the settlement between Elaine, Rick and Patrick

was entered into in good faith, the court could so determine, and it could also determine that Rick and Patrick as settling defendants were entitled to the protections of Code of Civil Procedure section 877, subdivision (b). Elaine made no opposition. The court determined that the settlement agreement was entered into in good faith and that the provisions of section 877, subdivision (b) would be applied to the settling defendants.

## C. Trial with Respect to Attorney Defendants

### (1) Special verdicts

Elaine's lawsuit proceeded to trial against the Attorney Defendants. In its special verdicts, the jury found that the Attorney Defendants (1) intentionally concealed an important fact from Elaine, resulting in a $100,000 economic loss to her; (2) breached a fiduciary duty to Elaine, resulting in a $50,000 economic loss to her; and (3) committed negligence, resulting in a $50,000 economic loss to Elaine.

### (2) Proposed judgment, objections, motion for judgment notwithstanding the verdict

Elaine filed a proposed judgment in the amount of $200,000 plus costs against the Attorney Defendants jointly and severally. The Attorney Defendants objected to the proposed judgment. They claimed, inter alia, that a Code of Civil Procedure section 877 offset was required.

In the body of their objections, the Attorney Defendants purportedly quoted at length from a transcript of Elaine's closing argument. Her attorney showed the jury a chart of Elaine's damages. He stated the value of the DeLong residence as opined by Elaine, the value of the Tully Place residence, and the value of the three undeveloped lots. He stated the total real property loss was $432,000. He also said the total value of Elaine's loss with respect to the vehicles was $161,750. Elaine's attorney stated, in sum, that the total loss for real property and personal property combined was $593,750.

The Attorney Defendants pointed out that in the trial against them, Elaine sought damages with respect to the same property that was the subject of the settlement with Rick and Patrick. Because the jury award pertained to the same property, the Attorney Defendants claimed the value of the settlement with Rick and Patrick should be offset against the $200,000 jury award, pursuant to Code of Civil Procedure section 877. The net result, they claimed, was that the judgment should be reduced to zero.

In their objections, the Attorney Defendants also stated that they had raised, with both counsel for Elaine and the judge, the question of whether

the jury should be asked to provide specific values for the various items of property at issue, but that both of them indicated it was unnecessary. The objections were supported by the declaration of Attorney Christopher Kanjo, representing the Attorney Defendants. He declared: "Toward the end of the trial in this matter, I asked both [counsel for Elaine] and His Honor in the hallway following a sidebar whether the jury should not be asked to provide specific values as to the various items of property in which Elaine was claiming a community property ownership. I specifically stated that in the event of a verdict there would have to be an offset, and that it could be helpful to know the values assigned by the jury. Both His Honor and [Elaine's counsel] stated to me that it was not necessary, using words along the lines of 'I think we can figure that out.' "

The Attorney Defendants also filed a motion for judgment notwithstanding the verdict. They argued that "even if all the evidence proffered by [Elaine] at trial is accepted as true, she failed to show the conduct of the [Attorney Defendants] caused the loss of an enforceable property interest, and thus failed to show that she suffered any recoverable damages, so that judgment must be entered in favor of [the Attorney Defendants] and against [Elaine]." The Attorney Defendants argued, inter alia, that a joint tenant has the absolute right to sever a joint tenancy and that "the loss of an expectancy is not the loss of an interest which can form the basis of an action at law." (Capitalization omitted.)

(3)  *Ruling*

In its minute order, the court stated: "Motion for Judgment NOV/Correct Judgment: GRANT [¶] The Motion to Correct Judgment to Reflect C.C.P. § 877 Offset is GRANTED. After reduction for the pre-trial settlement, the Judgment is reduced to zero."[2] The minute order further stated: "This court does not need to determine the exact amount of the settlement. It is clear that its value exceeds the $200,000 judgment."[3]

(4)  *Judgment*

The judgment recited the special verdicts. It concluded with this language: "This court, however, on the post-trial motions of [the Attorney] Defendants,

---

[2] The Attorney Defendants claim we need not address any of the issues Elaine raises concerning the Code of Civil Procedure section 877 offset because she fails to challenge the court's ruling on the motion for judgment notwithstanding the verdict. However, the above quoted language from the minute order notwithstanding, the judgment itself makes clear that the court applied a section 877 offset. Consequently, we address Elaine's arguments.

[3] The court stated that the offset was proper on more than one ground, including judicial estoppel against Elaine. The parties do not address the judicial estoppel theory. Inasmuch as it is not necessary to our decision, we do not address it either.

determined that the value of the consideration previously received by [Elaine] as part of a settlement with [Rick and Patrick] was greater than the $200,000.00 joint and several jury verdict and as a result, the court is reducing this judgment to zero pursuant to C.C.P. § 877, over the objection of [Elaine]."

## II

## DISCUSSION

### A. *Code of Civil Procedure Section 877*

Code of Civil Procedure section 877 provides in pertinent part: "Where a release . . . is given in good faith before verdict or judgment to one or more of a number of tortfeasors *claimed to be liable for the same tort,* or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others *in the amount stipulated by the release . . . , or in the amount of the consideration paid* for it, whichever is the greater. [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. . . ." (Italics added.)

### B. *Tortfeasors Liable for the Same Tort*

Elaine seizes upon the italicized language and says that Code of Civil Procedure section 877 does not apply to the facts of this case. First, she argues that Rick and Patrick, on the one hand, and the Attorney Defendants, on the other hand, are neither joint tortfeasors, nor "tortfeasors claimed to be liable for the same tort," within the meaning of section 877.

As our Supreme Court stated in *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290 [216 Cal.Rptr. 443, 702 P.2d 601], "the language of section 877 is significant—its drafters did not use the narrow term 'joint tortfeasors,' they used the broad term 'tortfeasors claimed to be liable for the same tort.' This language was meant to eliminate the distinction between joint tortfeasors and concurrent or successive tortfeasors [citation], and to permit broad application of the statute. [Citations.]" (*Id.* at p. 302; accord, *Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1272, fn. 12 [38 Cal.Rptr.3d 333].) Section 877 has been construed to apply " 'even more generally to "all tortfeasors joined in a single action" whose acts or omissions "concurred to produce the sum total of the injuries to the plaintiff." [Citations.]' [Citations.]" (*Gackstetter v. Frawley, supra,* 135 Cal.App.4th at p. 1272.)

For example, in *Kohn v. Superior Court* (1983) 142 Cal.App.3d 323 [191 Cal.Rptr. 78], the purchasers of a residence filed suit against a number of parties, including the seller and his affiliates (collectively, sellers), and certain contractors, each of whom had performed work or services on the property before the completion of the sale. The purchasers alleged that the sellers had misrepresented the condition of the property and had breached their fiduciary duties to disclose that the property had been damaged in a fire. They also alleged that one contractor had negligently performed repairs on the property and a structural pest control company had negligently performed an inspection thereon. In addition, the purchasers alleged that all defendants had conspired to conceal the fire damage and had committed fraud. The purchasers entered into a settlement agreement with the repair contractor and the structural pest control company before trial. Those settling defendants then obtained a good faith settlement determination and a dismissal of the sellers' cross-complaint. (*Id.* at pp. 325–326.)

The sellers filed a writ petition to challenge the good faith settlement determination and the dismissal of their cross-complaint. (*Kohn v. Superior Court, supra*, 142 Cal.App.3d at p. 325.) They argued that Code of Civil Procedure section 877 was inapplicable because they and the settling defendants were not "claimed to be liable for the same tort," within the meaning of the statute. They explained that they were being sued, in essence, for fraud, whereas the settling defendants were being sued for the failure to properly repair or inspect the property. (*Kohn v. Superior Court, supra*, 142 Cal.App.3d at p. 328.)

The appellate court in *Kohn v. Superior Court, supra*, 142 Cal.App.3d 323 held that Code of Civil Procedure section 877 applied. It stated: "Here, there was but one injury, [the] purchase of a house which was worth less than plaintiffs believed. [Citation.] The alleged tortious activities by the contractor, pest control inspector and seller were not independent, but combined to create one indivisible injury which took place when the sale was consummated." (*Kohn v. Superior Court, supra*, 142 Cal.App.3d at p. 329.)

█ Likewise, in the matter before us, there was one injury—the loss of anticipated survivorship interests in certain properties due to the creation and implementation of an estate plan that terminated the joint tenancies. The alleged tortious activities, even to the extent labeled as different causes of action, were not independent. The purported actions of Rick, in hiring the Attorney Defendants to further his plan, and of the Attorney Defendants, in preparing the documents to effectuate the plan, combined to create one indivisible injury when the documents were signed, the joint tenancies were terminated, and the new estate plan was put into place.

Elaine nonetheless insists that Code of Civil Procedure section 877 cannot apply, because an attorney cannot be a joint tortfeasor with a nonattorney. She impliedly states that Rick and Patrick, as nonattorneys, cannot be held liable for legal malpractice or breach of fiduciary duty, and concomitantly, that legal malpractice and breach of fiduciary duty are separate torts from those Rick and Patrick committed.

In support of her contention, Elaine cites *Munoz v. Davis* (1983) 141 Cal.App.3d 420 [190 Cal.Rptr. 400]. That case is inapposite. First and foremost, it has nothing to do with Code of Civil Procedure section 877. Moreover, the concepts expressed in that case are not helpful to Elaine's position in any event.

In *Munoz v. Davis, supra*, 141 Cal.App.3d 420, the plaintiff was injured in an automobile accident. He hired the defendant, an attorney, to file a lawsuit against the driver of the other automobile involved in the accident. However, the attorney failed to file a lawsuit before the expiration of the statute of limitations. When the plaintiff sued the attorney, the latter filed a cross-complaint against the driver for equitable indemnification. The court sustained the driver's demurrer without leave to amend. (*Id.* at p. 422.)

The appellate court affirmed, holding that the attorney and the driver were not jointly and severally liable for the plaintiff's injuries. (*Munoz v. Davis, supra*, 141 Cal.App.3d at pp. 422, 425.) It noted that it found no case making an original tortfeasor liable for the subsequent nonphysical injuries to a victim. Furthermore, it stated that the nexus between the driver's conduct and the risk of the injury later suffered because of the attorney's conduct was too tenuous for the imposition of a duty upon the driver with respect to the actions of the attorney. (*Id.* at pp. 426–427.) The court emphasized that the driver did not select the plaintiff's attorney and did not have any control over the attorney's actions or any opportunity to protect himself from the ramifications of the attorney's conduct. (*Id.* at p. 429.) As the court put it, "In order to protect himself from liability the negligent motorist would have to sit at the very elbow of his adversary's counsel and have unrestrained access to their communications, the attorney's work product and to the adversary himself." (*Id.* at p. 427.)

Moreover, the court said, "there are strong public policy reasons for not permitting equitable indemnity in favor of a negligent lawyer from his client's adversary. The effect of allowing a negligent attorney to recover indemnity from his client's adversary would be to judicially repeal the statutes of limitation, make every tortfeasor the guarantor of his victim's adequate compensation as well as the malpractice insurer of his victim's attorney and undermine the fiduciary duty of the nonnegligent attorney to his

client." (*Munoz v. Davis, supra*, 141 Cal.App.3d at p. 429, fn. omitted.) It also said that if the attorney's cross-complaint were permitted, then the driver would lose the protection of the statute of limitations and would have to "defend against the charge of negligence handicapped by the disappearance of witnesses, fading memories of the events, loss or destruction of physical evidence—all the impediments the statute of limitations was designed to avoid. [Citation.]" (*Id.* at p. 430.)

According to Elaine, *Munoz v. Davis, supra*, 141 Cal.App.3d 420 shows that the Attorney Defendants in the case before us are not joint tortfeasors with Rick and Patrick and cannot shift their malpractice liability to them. We find *Munoz* distinguishable, for a number of reasons.

First, *Munoz* involved two separate events—an automobile accident and an attorney's subsequent failure to file a lawsuit within the statute of limitations. In the case before us, however, we have only one event—the creation and implementation of an estate plan cutting off Elaine's survivorship rights. Second, the *Munoz* court emphasized that the victim had neither selected the attorney nor controlled his actions. In the matter before us, however, Rick purportedly hired the Attorney Defendants for the express purpose of further-ing his plan. Third, we do not have an instance where the affirmance of the trial court ruling would defeat the purposes of the statute of limitations and shift liability to a party who was entitled to the protections thereof. In short, the principles at play in *Munoz* are simply absent here.

True, as Elaine also asserts, attorneys owe a fiduciary duty of the highest character to their clients. (*Clancy v. State Bar* (1969) 71 Cal.2d 140, 146 [77 Cal.Rptr. 657, 454 P.2d 329].) Also true, as she says, Rick and Patrick are not attorneys who owe her a lawyer's fiduciary duty. Although both attorneys and nonattorneys are codefendants in this matter, they can still be "tortfeasors claimed to be liable for the same tort."

Indeed, *Gackstetter v. Frawley, supra*, 135 Cal.App.4th 1257 demonstrates the point. In that case, an attorney was held to be a joint tortfeasor with his client for the purposes of Code of Civil Procedure section 877.6.[4] (*Gackstetter v. Frawley, supra*, 135 Cal.App.4th at p. 1260.) The attorney prepared an estate plan, including two trusts, for the trustor. He also provided

---

[4] Code of Civil Procedure section 877.6 provides in pertinent part: "(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . . [¶] . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."

legal services to the trustee of the trusts, after the trustor's death. As it turned out, the attorney had inadvertently prepared a deed by which a piece of property was transferred into the wrong trust. And, the trustee purportedly used trust funds for personal purposes, and failed to prepare accountings and tax returns and to properly maintain trust records. Multiple legal proceedings ensued. (*Id.* at p. 1261.)

Certain trust beneficiaries filed a lawsuit against the attorney, wherein they alleged that he had committed malpractice in preparing the deed and had represented the malfeasant trustee. The attorney settled with the beneficiaries and obtained a good faith settlement determination. (*Gackstetter v. Frawley, supra*, 135 Cal.App.4th at pp. 1262–1263.)

The trustee filed a separate action against the attorney, for providing bad legal advice to him and for concealing the erroneous deed. The attorney asserted the good faith settlement determination, and the bar of Code of Civil Procedure section 877.6, as an affirmative defense. The trial court rejected the defense and entered judgment against the attorney for professional negligence, breach of fiduciary duty, fraud and breach of contract. (*Gackstetter v. Frawley, supra*, 135 Cal.App.4th at pp. 1263–1264.) The appellate court reversed. (*Id.* at p. 1280.)

██ It explained: " 'Joint tortfeasors' have been referred to as 'two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants.' [Citation.]" (*Gackstetter v. Frawley, supra*, 135 Cal.App.4th at pp. 1272–1273, fn. omitted.) It further stated: "The uncontradicted evidence shows that [the attorney] and [the trustee] both committed tortious acts that ' "concurred to produce the sum total of the injuries to the plaintiff[s]." ' [Citation.] They each 'contributed to or solely caused the single injury' to the [plaintiffs]. [Citation.] Thus, . . . they were joint tortfeasors." (*Id.* at p. 1275, fn. omitted.)

██ As *Gackstetter v. Frawley, supra*, 135 Cal.App.4th 1257 shows, an attorney may indeed be a joint tortfeasor with his client. Just as the attorney and the trustee were determined to be joint tortfeasors in *Gackstetter*, a fortiori, the Attorney Defendants and Rick should be held to be joint tortfeasors in the matter before us. In *Gackstetter*, the attorney was originally hired by the trustor and his first negligent act, the preparation of the erroneous deed, occurred in furtherance of the representation of the trustor, not in connection with the subsequent representation of the trustee. In the matter before us, however, the Attorney Defendants were purportedly hired by Rick, a codefendant, to further his plans. They allegedly all worked

together to effectuate one common scheme. Given this, there is no reason why they should not be determined to be "tortfeasors claimed to be liable for the same tort."

Elaine reminds us that her second amended complaint alleged causes of action for the unauthorized practice of law by Kiesler and for legal malpractice by the Attorney Defendants, causes of action not pleaded against Rick and Patrick. She appears to view these separate causes of action as separate torts. However, she cites no legal authority in support of that proposition. As *Kohn v. Superior Court, supra,* 142 Cal.App.3d 323 and *Gackstetter v. Frawley, supra,* 135 Cal.App.4th 1257 make clear, the key is that the tortious acts of the codefendants operate to produce a singular injury, irrespective of the legal theories on which the plaintiff bases his or her claims in framing the complaint.

■ As a final point, we make note of an important policy consideration underlying Code of Civil Procedure section 877. "[T]he idea of a 'double recovery' is inextricably linked to the joint liability of multiple tortfeasors. When multiple defendants are responsible for the same compensatory damages, a setoff is not only mandated under section 877(a), but is required by the fundamental principle that '. . . a plaintiff may not recover in excess of the amount of damages which will fully compensate him for his injury. [Citations.]' [Citation.]" (*Hoch v. Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48, 67 [29 Cal.Rptr.2d 615].)

The fact that legal professionals are involved as defendants does not change this principle. Elaine should not be permitted to obtain a double recovery just because of the identity of the defendants.

## C. *Consideration Paid for the Release*

Elaine, of course, maintains that there would have been no double recovery even without the offset. Furthermore, she contends there was neither an offset amount stipulated in the settlement agreement nor a finding of the consideration paid for the release, as required for Code of Civil Procedure section 877 to apply.

As noted previously, Code of Civil Procedure section 877, subdivision (a) provides that a release "shall reduce the claims against the others in the amount stipulated by the release . . . or in the amount of the consideration paid for it, whichever is the greater." We find no provision of the settlement agreement containing a stipulation as to the amount by which the claims against the Attorney Defendants would be reduced, and the Attorney Defendants do not appear to claim the document contains such a stipulation.

Consequently, we consider whether the court properly offset the judgment by the "amount of the consideration paid" for the release.

Elaine claims the court erred in adjudicating the amount of consideration paid, after the jury was dismissed and without any evidence to support a finding as to the amount. The Attorney Defendants, on the other hand, argue that Elaine herself provided the evidence at trial.

Unfortunately, we find little in the record to aid in our review. All we have is the settlement agreement itself, which makes clear that Elaine received from Rick and Patrick a quitclaim deed for their one-half interest in the DeLong residence. She also received a motor home, a boat, numerous vehicles, certain antiques, and the contents of the DeLong residence. The Attorney Defendants recite portions of what they represent to be the closing argument of Elaine's counsel, wherein he reminded the jury of the values of the various real and personal properties divided in the settlement agreement. That reminder purportedly included a value of $210,000 for a one-half interest in the DeLong residence, as established by Elaine herself.

While the Attorney Defendants have offered their representation as to what evidence was provided in the trial court, their representation is not evidence. Yet surely there must have been some evidence of the value of the joint tenancy properties in order for the jury to arrive at a damages award of $200,000. Elaine does not challenge the jury's award as being either insufficient or unsupported by the evidence.

The Attorney Defendants properly complain that Elaine has failed to provide a record of the evidence presented. Elaine simply responds that the Attorney Defendants did not provide one either.

It was Elaine's burden, as the appellant, to present an adequate record for review. (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 402 [134 Cal.Rptr.2d 689].) Having failed to do so, the judgment must be affirmed. (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [94 Cal.Rptr.2d 143].) This is so because " ' "[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent. . . ." [Citation.]' [Citations.]" (*Ibid.*) "The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court [erred]." (*Id.* at p. 448.)

Elaine's citation to *Albrecht v. Broughton* (1970) 6 Cal.App.3d 173 [85 Cal.Rptr. 659] is unavailing. While *Albrecht* indicates that the question of the appropriate amount of an offset may be submitted to a jury, it does not state

that this is necessary in all events. To the contrary. The *Albrecht* court held that it was error to permit the defendant to bring in evidence of the settlement, to the possible detriment of the plaintiff, despite the fact that the plaintiff had already stipulated to the amount of the offset. (*Id.* at p. 177.)

Elaine's argument that there was no compliance with California Rules of Court, rule 3.1306(a) is equally unavailing. We are not faced with an issue of whether evidence was properly received at a law and motion hearing. Rather, the question before us is whether the evidence presented at trial constituted substantial evidence in support of the court's finding that the consideration paid for the release exceeded $200,000. However, Elaine has provided no record of the evidence, as we have said. Given that, we must affirm.

## III

## DISPOSITION

The judgment is affirmed. The Attorney Defendants shall recover their costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.