Filed 11/10/15  Pucci v. 495 Productions CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PHILIP PUCCI, | B257693 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BC538086) |
| 495 PRODUCTIONS, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. Richard L. Fruin, Jr., Judge.  Affirmed.

Doll Amir & Eley, Gregory L. Doll, Ronald M. St. Marie and L. Katie Fulsher, for Defendants and Appellants.

Hurwitz, Orihuela & Hayes and Douglas B. Hayes for Plaintiff and Respondent.

_____

This case is yet another example of the misuse of the special motion to strike under Code of Civil Procedure section 425.16, the "anti-SLAPP statute."[1] After an employee sued his former employer on various causes of action, the employer filed an anti-SLAPP motion to strike the cause of action for defamation. The trial court denied the motion finding no protected activity. We affirm the order on both procedural and substantive grounds.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant and appellant 495 Productions, Inc. (495 Productions) produces reality television shows, including "*Jersey Shore*." For four months from October 26, 2012, until his termination on February 26, 2013, plaintiff and respondent Philip Pucci (Pucci) worked as an assistant editor for 495 Productions. During this period, defendant and appellant Ryan Abbott (Abbott) was Pucci's supervisor.

In August and September 2013, Pucci filed with the National Labor Relations Board (NLRB) original and amended charges against 495 Productions, alleging that 495 Productions had terminated him in retaliation for engaging in protected union activities and had an overly broad release agreement. In November 2013, the NLRB notified Pucci that it was dismissing all but one of his allegations. Specifically, the NLRB had found insufficient evidence to establish that 495 Productions had violated labor laws, but the allegation that 495 Productions maintained an overly broad release agreement remained "subject to further proceedings." Subsequently, 495 Productions entered into a settlement agreement with the NLRB regarding the release agreement. The NLRB notified Pucci in January 2014 that, in light of the settlement, it would not institute further proceedings. Pucci had the right to appeal the NLRB's decision until February 11, 2014, but did not do so.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

SLAPP is an acronym for strategic lawsuits against public participation. An order granting or denying a special motion to strike under section 425.16 is directly appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

Nearly a year after Pucci had been terminated by 495 Productions, Abbott received a telephone call sometime between February 4 and 7, 2014, from a prospective employer of Pucci. According to Abbott, the caller asked whether Pucci had been employed by 495 Productions and why he had been terminated. Abbott "responded by stating something to the effect that Plaintiff had filed a lawsuit against 495 Productions, that Plaintiff's claims had been dismissed and that [Abbott] did not feel comfortable commenting any further, given the fact that attorneys were involved."

In February 2014, Pucci filed a lawsuit against 495 Productions and Abbott and filed a first amended complaint (FAC) in March 2014. The FAC, which is not part of the appellate record, contains six causes of action, including a cause of action for defamation. The FAC apparently alleges that after the settlement agreement was entered into, Abbott began telling prospective employers that Pucci had filed a "lawsuit" against 495 Productions that had been "thrown out of court."

495 Productions and Abbott filed a special motion to strike the defamation cause of action. Pucci opposed the motion, which the trial court denied on the ground that "the anti-SLAPP statute isn't implicated by the subject conduct." This appeal followed.

## DISCUSSION

### I. Inadequate Record

"'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. . . .'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) This means an appellant has the burden of overcoming the presumption of correctness by, among other things, providing an adequate appellate record demonstrating error; failure to do so requires resolution of the issue against the appellant. (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.)

495 Productions and Abbott (collectively appellants) have failed to provide an adequate record on appeal because there is no copy of the FAC before us. Appellants are challenging the denial of a motion they brought to strike a defamation cause of action, but have not seen fit to provide us with the operative pleading containing the specific

3

allegations of the defamatory statements.  As an example of a problem this creates for us in making a meaningful review, appellants argue in their opening brief that "Pucci's argument, however, was not supported by the allegations of the FAC or the evidence offered."  Given the frequency with which appellants refer to the "allegations" of the FAC, it is baffling that no copy of the FAC is before us.

For this reason alone, we find that appellants have failed to meet their burden on appeal and affirm the order denying their special motion to strike.  Even addressing the merits, we still affirm.

## II.  Anti-SLAPP Statute

Section 425.16, subdivision (b)(1) provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  The defendant bringing the special motion to strike has the initial burden of making a prima facie showing that the claims arise from protected activity.  If the defendant makes this showing, the burden shifts to the plaintiff to establish a probability of prevailing on the claims.  (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1408.)  An appellate court reviews de novo an order denying an anti-SLAPP motion.  (*Ibid.*)

Section 425.16, subdivision (e) provides:  "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) *any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,* (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) *any other conduct in furtherance of*

4

*the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.*" (Italics added.) Appellants claim that the highlighted subdivisions—(e)(2) and (4)—are implicated here.

## III. No Protected Activity

### A. Section 425.16, subdivision (e)(2)

In their special motion to strike, appellants argued that section 425.16, subdivision (e)(2) applied because "Plaintiff's defamation claim arises directly from statements made by Defendants in connection with an official proceeding authorized by law, namely, Plaintiff's case before the NLRB."

"[A] a statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266.) "The statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding. The statements or writings in question must occur in connection with 'an issue under consideration or review' in the proceeding." (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 866.)

Here, Abbott's alleged defamatory statements to Pucci's prospective employer that Pucci's "lawsuit" had been "thrown out of court" were unrelated to any substantive issues under review by the NLRB. The issues under review by the NLRB were whether 495 Productions had violated labor laws and had an overly broad release agreement. There is no indication in the record before us that Abbott even knew much about the NLRB proceeding or that he said anything about the issues being reviewed.

Moreover, Abbott's statements were made to someone who was a complete stranger to him and to the NLRB proceeding. Thus, the statements were not made to someone with an interest in the proceeding. Appellants' argument that statements to a prospective employer by a former employer made without malice are immune from tort liability under Civil Code section 47 goes to the merits of the defamation claim, not to the first step of section 425.16 as to whether the alleged speech is constitutionally protected.

### B. *Section 425.16, subdivision (e)(4)*

In their special motion to strike, appellants also argued that the alleged statements were protected under section 425.16, subdivision (e)(4), which applies to "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479.)

Appellants' argument that section 425.16, subdivision (e)(4) applies was based almost entirely on their claim that 495 Productions is "an entity in the public eye." According to appellants, 495 Productions "is the producer of the wildly popular and controversial reality television series, *Jersey Shores*, which Plaintiff worked on. . . . 495 Productions continues to produce reality television and has seven (7) shows that are either currently airing or will be airing in the near future on various cable television networks."

We are not so confident that appellants' mere claim that 495 Productions is a public entity actually makes it so. But even assuming 495 Productions is a public entity, not every statement made by it, or its representatives, is sufficient to meet the public interest requirement. Appellants claimed that the requirement was met because "Defendants' statements, although private, were made in the context of an ongoing controversy or dispute—Plaintiff's NLRB action against 495 Productions." But appellants never addressed or identified the broad segment of society affected by the private statements made between two people. In their opening brief, appellants assert "there is a manifest public interest involved in the alleged defamatory statement: the outcome of the NLRB action involving 495 Productions." But there is nothing in the

record to support their assertion that anyone besides the parties to the action even knew, let alone cared about, the NLRB action or its outcome.

Because we conclude that appellants did not meet their initial burden of showing their conduct was constitutionally protected, we do not reach the second step of the anti-SLAPP analysis of whether Pucci demonstrated a sufficient probability of prevailing on his defamation claim.

## DISPOSITION

The order denying the special motion to strike is affirmed. Pucci is entitled to recover his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
      ASHMANN-GERST


We concur:


_____, J.
      CHAVEZ


_____, J.
      HOFFSTADT


7