Filed 12/22/25  Roy v. Roy CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURTOF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NEVENA ROY,<br><br>　　　Plaintiff and Respondent,<br>v.<br><br>JOYANTO ROY,<br><br>　　　Defendant and Appellant. | A170691<br><br>(San Mateo County<br>Super. Ct. No. 17-FAM-03270) |

In this family court action Joyanto Roy (Father) appeals from an order filed May 24, 2024 denying his request to modify visitation and to change venue.  Father argues the family court: (1) erroneously applied the changed circumstances rule in denying his request to modify visitation with his then seven-year-old daughter (Minor); (2) abused its discretion in denying his request to change venue from San Mateo County to San Diego County where he now resides; (3) abused its discretion and violated due process "by striking Father's filings despite an ADA accommodation" (capitalization omitted); and (4) rendered "cumulative rulings" that "create at minimum an appearance of bias."

We conclude Father has failed to provide an adequate record to permit us to determine if the trial court erred in denying his request for modification and change of venue.  His due process claim fails for the same reasons. Finally, Father's claim of "judicial bias" is without merit.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Since the inception of this family law matter in 2017, there have been multiple custody and visitation disputes. In a nonpublished opinion, we affirmed the December 1, 2022 final custody and visitation order. (*Roy v. Roy* (Oct. 18, 2024, A166932) [nonpub. opn.] (*Roy I*).)

A.   *December 1, 2022 Permanent and Final Order*

In or about December 2021, Nevena Roy (Mother) moved from San Mateo County to San Diego with Minor. Early in 2022, Father relocated to San Diego.

After numerous hearings and temporary orders regarding custody and visitation, the San Mateo County Superior Court issued a final order after hearing on December 1, 2022 that awarded joint legal custody of Minor to Mother and Father, with Mother having sole physical custody. As to visitation, the order provided: Father "shall only have visitation with [Minor] every other weekend from Friday pick-up at [Mother's] house at 6:15 p.m., until Sunday at 6:00 p.m. drop-off at [Mother's] house and every other Wednesday from 6:15 p.m. pick-up at [Mother's] house until 8:00 p.m. drop-off at [Mother's] house." The order concluded with the following admonishment: "The orders . . . set forth herein are intended by this Court to be a permanent and final order pursuant to *Montenegro v. Diaz* (2001) 26 Cal.4th 24[9] [(*Montenegro*)]. A substantial change in circumstances is required in any future court proceedings to modify these orders."

B.   *Father's Requests for Orders At Issue in this Appeal*

On November 27, 2023, Father filed a request for order (RFO) for "Modification of Visitation and Change of Venue." On December 6, 2023, Father filed a first amended RFO "Modification of Custody, Visitation, Child

Support, and Change of Venue." *Neither* RFO is included in the record on appeal. The hearing on the RFOs was set for March 28, 2024.

On March 6, 2024, Father notified the court he had retained a limited scope attorney. Then on March 8, Father sought to file a memorandum of points and authorities in support of a purported "Second Amended Request for Order for: Modification of Child Visitation, Modification of Child Support, Change of Venue, and Request for Attorney's Fees and Costs" (Second Amended RFO). The gist of Father's Second Amended RFO was to change venue to San Diego since he now resided there. He further requested extending his alternating weekends from a 6:00 p.m. Sunday exchange to a Monday drop off at school and extending his alternating Wednesday dinner visits to weekly overnights with drop off at school the next day.

Father has failed to provide this court a complete record on appeal. Father's record on appeal includes a "case summary" which appears to be like a register of actions prepared by the trial court. From what we can discern from the case summary, on March 15, Mother filed a memorandum of points and authorities in opposition to Father's RFO to change visitation, child support, attorney's fees, and change of venue. This document is not included in the appellate record. Mother's attorney filed a declaration on March 18, and it is not in the appellate record either.[1] According to the case summary, Father served Mother's attorney with the Second Amended RFO on March 21.

On March 21, according to the case summary, the family court received a document described as Father's "Disability Accommodation Request."

---

[1] At the hearing on the order now on appeal, Mother's counsel referred repeatedly to the "pleadings" Mother had filed; as we have noted, these appear to be the documents that are not in the appellate record.

On March 25, Father filed two supporting declarations, one in support of the Second Amended RFO and the other a "Reply" to Mother's "Responsive Declaration." The substance of the declarations is the same. Mother's Responsive Declaration is not included in the appellate record.

On March 26, Mother filed a request to strike Father's memorandum of points and authorities in support of the Second Amended RFO based on his non-compliance with the filing and service deadlines in Code of Civil Procedure section 1005, subdivision (b). That section provides: "Unless otherwise ordered or specifically provided by law, all moving and supporting papers shall be served and filed at least 16 court days before the hearing." The deadline for the March 28 hearing was March 6, thus making the March 8 filing untimely. Mother also argued Father's 10-page Reply Declaration in Support of the Second Amended RFO and 130 pages of attachments exceeded the 5-page limit set forth in California Rules of Court, rule 5.111 (a).

On April 2, Mother filed a request to strike Father's Second Amended RFO (that had been filed on March 25 and served on March 29) as untimely for the continued hearing date set for April 3.

C.  *April 3, 2024 Hearing on Father's Requests*

Father's requests came on for hearing on April 3, having been continued from March 28 based on Father's "Disability Accommodation" received on March 21 (according to the case summary).

At the April 3, 2024 hearing, the arguments were focused on Father's requests to modify visitation and change venue to San Diego based on the residence of Mother, Minor, and Father. As to the request to change venue, Mother's counsel noted Father had previously sought a change of venue, which the court denied in May 2022. Counsel argued that "as laid out in the MPA, it would not promote the ends of justice . . . . Absolutely the opposite.

4

That goes to the forum shopping argument. [¶] You saw, as we laid out,[2] which [Father] did not address to this Court that there's . . . an entirely whole fiasco with the San Diego case that we had to deal with in these intervening months since November of 2023. He tried this. It's clear to me he's trying to forum shop. Especially when . . . he's filing these motions to change venue after the Court is issuing rulings that are not in his favor. [¶] So the ends of justice would absolutely not be served. The opposite. [¶] And then as for convenience, I think the fact of the matter is that this case has proceeded virtually[3] since 2020." Mother's counsel also argued that the change of venue would be "costly." "It's costly financially and in every aspect to this family if it gets moved. I think it will only serve [Father's] desire to get a new crack at this case with a new judge and a new venue."

In response, Father's counsel said that even though the case had been remote for several years, Father's asserted ADHD diagnosis made it difficult for him "to pay attention on Zoom." Counsel argued the prior request to change venue was "years ago," and that the parties had been living in San Diego for over two years. In addition to being able to attend hearings in person, Father could avail himself of a "self-help center" in San Diego and find local counsel. Father's counsel further noted that over the years several different judges had been assigned to the case and had been able to "review the record and come up with an opinion on their own, the same is true for a judge in San Diego . . . ."

Mother's counsel was "concerned" about Father's "gamesmanship" given Father's election to seek a child support order in San Diego while the

---

[2] This is apparently a reference to briefs in opposition filed by Mother that are not included in Father's record on appeal.

[3] Which we take to mean remote proceedings on Zoom or its equivalent.

5

case has been pending in San Mateo County. Although Father stipulated that the matter would not be heard in San Diego, he now "wants it to be heard in San Diego again." Counsel added that Father was relying on a diagnosis from 2009 and had "never once sought accommodations in this case since [it began] in 2017." "Countless appearances, mediations, hearings, trials, settlement conferences" had occurred "exclusively via Zoom since the pandemic."

After hearing further argument on the change of venue request, the court found "the convenience of the parties and the witnesses and the ends of justice would not be promoted by such a change."

As to the visitation issue, Father's counsel admitted that Father's earlier filings requested a change in custody, but that now Father was "only asking for a change in visitation." The court asked whether "[a]s a practical matter, would it change, would the request in visitation be a change from about 15 percent to like 35 percent, so as a practical matter [it] would be sort of a change in custody?" Counsel maintained Father was not seeking a change in custody; rather he was "requesting only to add a few hours on Friday, pick up on [sic] school Friday instead of 6:00 p.m. And instead of dropping off Sunday on his alternating weekends at 6:00 p.m., he would drop off at school or at 7:30 a.m. if school is not in session. And instead of having alternating Wednesday dinner visits, he's asking for every Wednesday overnight."

Mother's counsel argued that Father's RFO was filed "four months after the last hearing and denial of his previous requests," that there had been "multiple before that" that were denied, and Father had been repeatedly advised that requests to change the December 1, 2022 order, which was a

6

permanent and final order, required a significant change in circumstances, which to date had not been established.

D.    *Trial Court Ruling*

On May 24, 2024, the court issued written findings and orders after the April 3 hearing.  Relying on Code of Civil Procedure section 1005, subdivision (b) and California Rules of Court, rule 5.111 (a), it granted Mother's requests to strike Father's: (1) memorandum of points and authorities in support of his Second Amended RFO; (2) reply declaration in support of his Second Amended RFO; and (3) Second Amended RFO.  Relying on Code of Civil Procedure section 397.5, the court denied Father's request to change venue to San Diego County, finding the "ends of justice and the convenience of the parties would not be promoted by transferring the case" as requested.

The court then denied Father's request to modify custody and visitation on the following grounds: First, his December 6, 2023 RFO specifically requested a change in custody.  Second, the December 1, 2022 order required "a significant change in circumstances to modify the custody and visitation orders contained therein.  There is a desire to protect the stable custody and timeshare arrangements that have been found to be in the best interest of the child[] and made permanent and final orders."  The court found that Father "has been admonished by the Court repeatedly that a significant change in circumstances is required to modify the existing, permanent, and final custody and visitation orders," and concluded Father "failed to meet his burden to show a significant change of circumstances warranting a modification of the current custody and visitation orders."

## DISCUSSION

Father argues the court abused its discretion by applying the changed circumstances rule and denying his request to change venue.  He further

7

contends the court abused its discretion and violated due process by striking his filings "despite an ADA accommodation." (Capitalization omitted.) Finally, he claims the court was biased against him. [4]

Our review is hampered by Father's one-sided version of the evidence and an inadequate record. (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447–448 ["[t]he absence of a record containing *what actually occurred* at trial precludes a determination that the trial court abused its discretion"], italics added.) We thus may consider his appellate claims that are not adequately supported by the record as forfeited.

A. *Review of Principles of Appellate Practice*

Although we set forth these principles in *Roy I*, we reiterate them here. These same standards apply where parties represent themselves, as Father does here, and to appeals where parties are represented by counsel. (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210 [self-represented litigant is "treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys"].)

Orders challenged on appeal are presumed to be correct and it is the appellant's burden to affirmatively show that the trial court erred. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is also the appellant's burden to show prejudice from any error. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) The California Constitution permits reversal only if "the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) The Code of Civil Procedure provides that appealed judgments and orders may be reversed only if the record shows that an error was "prejudicial"; the error caused appellant "substantial injury"; and absent

---

[4] Mother did not file a respondent's brief in this appeal.

8

the error, "a different result would have been probable." (Code Civ. Proc., § 475.)

"[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) Failure to provide an adequate record requires that the issues be resolved against the appellant. (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.) Here, Father has failed to provide an adequate record in several key respects. First, he did not include the RFOs (November 23, 2023 and December 3, 2023) that the court considered and denied. Second, he did not include Mother's opposition to the November 23, 2023 and December 3, 2023 RFOs, which were discussed by Mother's counsel, considered by the court at the April 3 hearing, and referenced in the May 24 order denying Father's RFOs. Presumably Mother's opposing papers argued against Father's request to modify visitation and change of venue. Third, Father has provided an inadequate appellate record to assess his asserted "ADA" claim, although he has placed it in issue on appeal.

B. *Applicable Law and Standard of Review*

Under the California statutes that govern child custody and visitation, "the overarching concern is the best interest of the child." (*Montenegro, supra*, 26 Cal.4th at p. 255.) The factors to be considered in determining a child's best interest "include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents." (*Ibid.*, citing Fam. Code, § 3011.) Once a final judicial custody determination has been made, whether that determination is reflected in an order made by a court after an adversarial proceeding or in a stipulated custody order, a "variation on the

9

best interest standard" applies: the "changed circumstance" rule, under which "a party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification." (*Montenegro* at p. 256.)

We apply the deferential abuse of discretion test in reviewing custody and visitation orders. (*Montenegro*, *supra*, 26 Cal.4th at p. 255.) "Under this test, we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Ibid.*) Our review of challenges to the family court's findings of fact "is limited to whether any substantial evidence, contradicted or uncontradicted, supports the trial court's ruling," resolving all conflicts in the evidence in favor of the prevailing party and drawing all reasonable inferences to support the court's decision. (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 300.)

We " 'do not reweigh evidence or reassess the credibility of witnesses.' " (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) In any substantial evidence challenge, the appellant has the burden to set forth in his brief all the material evidence on the point, and not merely his own evidence. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) Failure to meet this burden results in the forfeiture of the claim. (*Ibid.*)

C.     *Modification of Visitation*

A request for modification of a final custody order is subject to the changed circumstances rule. (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956.) However, "the changed circumstance rule does not apply when a parent requests only a change in the parenting or visitation arrangement not amounting to a change from joint custody to sole custody, or vice versa. Instead, the trial court considers a request to change the

10

parenting or visitation arrangement under the best interests of the child standard." (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1072.)

Although a change in circumstances is not typically required when seeking to alter visitation, the December 1, 2022 order expressly states that "[a] substantial change in circumstances is required" in order "to modify" the orders stated therein—i.e., custody *and* visitation.  Father has been aware of the changed circumstances requirement for nearly three years; his requests to modify the December 1, 2022 order without a showing of changed circumstances have been denied repeatedly.  To the extent Father is seeking to challenge the propriety of the changed circumstances rule as applied to visitation, his time to appeal this particular provision has long since passed.

But in any event, it was Father's burden as the appellant to give this court a record that would enable us to review the asserted errors.  Father's failure to include in the record the RFOs from November 27, 2023 and December 3, 2023 and Mother's opposing papers, which the court considered, requires us to affirm the family court and find against Father on his claim that the trial court erroneously applied the changed circumstances rule to his modification of visitation request.  (See *Oliveira v. Kiesler*, *supra*, 206 Cal.App.4th at p. 1362.)

D.    *Change of Venue*

Father argues the trial court erred in denying his motion to change venue from San Mateo County to San Diego County because he now resides in San Diego, where Mother and Minor also reside.

Code of Civil Procedure section 397.5 provides: "In any proceeding under the Family Code, where it appears that both petitioner and respondent have moved from the county rendering the order, the court may, when the ends of justice and the convenience of the parties would be promoted by the

11

change, order that the proceedings be transferred to the county of residence of either party." The standard of review for an order granting or denying a motion to change venue is abuse of discretion. (*Fontaine v. Superior Court* (2009) 175 Cal.App.4th 830, 836.)

Here, the trial court expressly concluded that changing venue would not promote "the ends of justice and the convenience of the parties." (Code Civ. Proc., § 397.5.) Notwithstanding that the parties all reside in San Diego, the transcript from the hearing indicates the court and opposing counsel were concerned that Father had ulterior motives for seeking a change in venue from San Mateo County to San Diego County. Father, for his part, asserts a change in venue would afford him the benefit of assistance from family child services in San Diego, which is familiar with the family's circumstances.

Again, our review is hampered by Father's failure to include the pleadings the court considered in denying Father's request to change venue—Father's RFOs from November 27, 2023 and December 3, 2023 and Mother's opposing papers. Without a complete record, we have been presented with only half of the picture. As such, we cannot determine whether the court abused its discretion in denying what would appear to be a colorable claim for a change in venue in light of the residences of Father and Mother. We therefore are required to affirm the family court and find against Father on his claim that the trial court abused its discretion in denying his request to change venue. (See *Oliveira v. Kiesler*, *supra*, 206 Cal.App.4th at p. 1362.)

E.     *Due Process In Connection With Disability Accommodation*

Father argues the court "abused its discretion and violated due process by striking his filings despite an ADA accommodation." (Capitalization omitted.) Father's claim is premised on his assertion that he was granted an

extension "to re-file his Second Amended RFO." Nothing in the record Father has provided us supports this assertion.

In the trial court's May 24 findings and order, it states in the introductory paragraph only that the March 28 hearing was continued to April 3, 2024 "based on [Father's] Disability Accommodation Request." (Italics omitted.) As noted, Father's "filings" were stricken because they were late and exceeded the page limit. Father has not provided us with any record that he was granted an extension to file his Second Amended RFO and related pleadings or allowed to file oversized responsive pleadings.[5] It appears Father received some accommodation in that the March 28 hearing was continued, but the exact nature of the request and the extent of accommodation is unknown.

By failing to provide an adequate record supporting his claim of error, we are unable to review his claim on appeal. (*Vo v. Las Virgenes Municipal Water Dist., supra,* 79 Cal.App.4th at pp. 447–448.)

Accordingly, Father has not demonstrated an abuse of discretion resulting in a due process violation.

---

[5] Father's reliance in his appellate brief on *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261 is puzzling, given his citation to a quotation from that opinion that does not exist. Further this appeal is nothing like the facts in *In re Marriage of James & Christine C.* where it was undisputed that the applicant was suffering from an ongoing disability (bipolar disorder and cancer) that required hospitalization the day before trial, and the application was supported with a declaration from an oncologist stating that the applicant was "not fit for trial." (*Id.* at pp. 1268, 1277.) Under those circumstances, the appellate court held a continuance was a reasonable, if not necessary, accommodation, even if it meant a delay in trial. (*Ibid.*)

F.    *Bias*

Father claims a series of rulings constitute "cumulative error" that create "at minimum an appearance of bias" requiring reversal. He asserts the court: (1) repeatedly imposed monetary sanctions between 2020 and 2024 despite his fee waivers; (2) engaged in selective rule enforcement by accepting Mother's late or procedurally defective filings; (3) disregarded "neutral recommendations" of Family Court Services "favoring additional time with Father"; and (4) made hostile and disparaging remarks that Father had engaged in " 'over-litigation.' " He asserts he was "deprive[d]" of the fair hearing he was entitled to by law, and that the case should be "reconsidered before a different judge."

Preliminarily, Father's mere enumeration of rulings that purportedly demonstrate an "appearance of judicial bias"—without more—is insufficient to overcome the presumption of correctness. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) As discussed, a party asserting trial court error may not merely point out the purported error and rest there. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207.) Rather, the challenger must present argument and legal authority on each point raised. (*Ibid.*) Father did not meet his burden on appeal.

To the extent Father intends to raise a statutory judicial bias claim, he forfeited it by failing to file a disqualification motion in the family court. (See Code Civ. Proc., § 170.3, subd. (c)(1) [a party who believes a judge is required to disqualify himself or herself must file a disqualification motion in the trial court "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification"]; *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 ["We

14

conclude that appellant's disqualification arguments are forfeited by his failure to raise them below"].)[6]

Father's only other avenue for his bias argument is the due process clause, "which sets an exceptionally stringent standard." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589 (*Schmidt*).) "A constitutional finding of judicial . . . bias is appropriate only when 'extreme facts' demonstrate a probability of actual bias. [Citation.] Appellate courts consider whether it is reasonably clear the trial judge entertained preconceptions about the parties . . . that made it impossible for a party to receive a fair trial. [Citations.] This review is independent." (*Id.* at p. 589.)

Father makes broad brush claims that the family court repeatedly ruled against him, tempered with the observation that "[i]ndividually, each ruling could be debated." That is not enough. Rather, "[i]t is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation. [Citation.] The appellate court's role is not to examine whether the trial judge's behavior left something to be desired, or whether some comments would have been better left unsaid, but to determine whether the judge's behavior was so prejudicial it denied the party a fair, as opposed to a perfect, trial. [Citation.] Mere expressions of opinion, based on observation of the witnesses and evidence, do not demonstrate judicial bias. [Citation.]

---

[6] Even if Father had raised a statutory disqualification issue in the family court, he would have forfeited it by failing to seek review by a petition for writ of mandate, which is the exclusive appellate remedy. (See Code Civ. Proc., § 170.3, subd. (d) ["The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate . . . ."]; *Yolo County Dept. of Child Support Services v. Myers* (2016) 248 Cal.App.4th 42, 50–51 ["statutory motions to disqualify . . . are not appealable orders and may be reviewed only by a writ of mandate"].)

Numerous and continuous rulings against a party are not grounds for a finding of bias." (*Schmidt, supra,* 44 Cal.App.5th at p. 589.)

We have reviewed the 73-page transcript from the hearing on April 3 and find no judicial bias. Father points out the court's comment about the case being " 'over litigat[ed]' " and describes it as a "[h]ostile [r]emark[]" that "reinforce[s] the appearance that the court viewed Father's participation itself as problematic." We disagree. It does not suggest "disdain and impatience" toward Father or otherwise evince a " 'predetermined disposition' " to rule against him. (See *Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, 248, 253, disapproved on another ground by *People v. Freeman* (2010) 47 Cal.4th 993, 1006, fn. 4.) Rather, the isolated observation was as to the voluminous and repeated filings in this case, a fact that is not in dispute.

Accordingly, we conclude Father's claim of judicial bias is without merit.

## DISPOSITION

The May 24, 2024 order is affirmed.

_____

Miller, J.

WE CONCUR:


_____

Stewart, P. J.


_____

Desautels, J.


A170691, *Roy v. Roy*