Filed 3/7/23  DeCarava v. Barrager CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAURA DECARAVA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>SAAM BARRAGER,<br><br>        Defendant and Respondent. | A164177<br><br>(San Francisco County<br>Super. Ct. Nos. CCH-21-584041,<br>CCH-21-584062) |

Laura DeCarava rented part of a house in San Francisco, and had lived there for several years before Saam Barrager bought the property in 2020. DeCarava and Barrager agreed that DeCarava had rented part of the house, but disagreed as to what part she had rented.  Eventually, DeCarava petitioned for civil harassment restraining orders against Barrager, claiming that he had entered her apartment without her permission; then Barrager petitioned for orders against DeCarava, claiming that she followed and threatened him when he was in parts of the house he was free to access and blocked his access to those areas.  After a hearing, the trial court denied DeCarava's petition and granted Barrager's, and DeCarava now appeals.  We shall affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *DeCarava's Petition Against Barrager (CCH-21-584041)*

On September 16, 2021, DeCarava filed a petition for civil harassment restraining orders under Code of Civil Procedure section 527.6.[1] She sought personal conduct orders and orders requiring Barrager to stay at least 50 yards away from her and her home, workplace, school, and vehicle.

In support of her petition, DeCarava declared under penalty of perjury that Barrager had harassed her on five separate occasions over the past several weeks. On August 4 and August 21, he entered her "3rd floor apartment" without providing notice; on both occasions, she called the police. On September 1, he and the building co-owner, Betty Trombatore, verbally harassed her outside the building and "threatened to evict me for completing a necessary apartment repair, putting an exterior safety door on my apartment." A few days later, Barrager came up the steps to her "3rd floor apartment" and stood outside the front entry door to the apartment "for a period" before leaving the building. Most recently, on September 13, he posted a three-day notice to quit on her door listing false grounds for eviction. DeCarava stated that Barrager was "engaging in an escalating pattern harassment [*sic*]. He has harassed me through unlawful entry to my apartment, verbal and written intimidation and threats, destruction of personal property, reducing housing services, refusing to make apartment repairs, threatening to tow my vehicle and threatening to illegally evict me (verbally and in writing) in retaliation for reporting his actions to authorities. I am requesting a Restraining Order to protect myself from him."

The trial court issued a temporary restraining order prohibiting Barrager from contacting DeCarava (apart from written communication

---

[1] All dates are in 2021 unless otherwise stated.

related to landlord-tenant issues) and requiring Barrager to stay 50 yards from DeCarava and her home (except that he could enter her home in case of emergency). A hearing was set for November 5.

Barrager's response to DeCarava's petition is not included in the Clerk's Transcript, but part of it is attached as an exhibit to DeCarava's opening brief in this appeal. As shown in the exhibit, Barrager declared under penalty of perjury that DeCarava rented a single private room, "#4," on the third floor of a house he owned, and that she shared some of the space on the third floor with him as owner of the building. He stated that apart from the shared space and DeCarava's room, there were three other private rooms on the third floor that were his to use; DeCarava's lease gave him the right to enter space that was not for her exclusive use; and he had never entered or tried to enter #4, the only room that was for DeCarava's sole use. He further stated that DeCarava twice called the police to "intimidate" him; that on the first such occasion, August 4, the police recommended he evict DeCarava; and that on the second, August 21, the police left after a finding of no merit.

B.     *Barrager's Petition Against DeCarava (CCH-21-584062)*

On September 21, Barrager filed a request for civil harassment restraining orders to protect him and co-owner Trombatore, who is his mother, against DeCarava. Barrager sought orders requiring DeCarava to stay 50 yards away from him, his mother, and his vehicle, except that within the house DeCarava should stay three yards from him. He also asked the court to vacate the temporary restraining order against him, allow him to remove an illegal door that DeCarava had constructed, and allow him to care

3

for his ailing elderly mother at the house, where she lived on the ground floor.[2]

Barrager declared under penalty of perjury that in September 2020, he and his mother bought the house where DeCarava was a tenant so that his mother could live close to him and he could care for her. His mother now lives on the first floor of the house, and the effect of the temporary restraining order against Barrager had been to isolate his mother.

Barrager stated that the third floor of the house has four bedrooms, and DeCarava rents one of them, #4, for $850 per month. DeCarava had rented the room since 2014, and Barrager and his mother expected she would continue to live there after they bought the house. He stated, as he had in his response to DeCarava's petition, that the other three bedrooms are his to use; and the hall and stairs are shared space. He stated that when he and his mother asked DeCarava to abide by the terms of her lease, DeCarava "escalated and retaliated."

Barrager attached a one-page "Residential Tenancy Agreement" between DeCarava and Feng Y. Li, former owner of the property. The agreement was dated April 1, 2014, covering the period from April 1, 2014 to April 2, 2015, and stated that Li, as owner, "rents to share with Laura Douglass DeCarava ('TENANT'), and Tenant hires 1374 46th Ave., 4# 3d fl, SF CA 94122 California (the 'PREMISES'). No other portion of the building wherein the Premises is located is included unless expressly provided for in

_____

[2] Barrager stated that DeCarava had lied to get the temporary restraining order against him, which isolated his mother and denied him the ability to care for her. Attached to Barrager's petition was a statement from his mother, who represented that she had sold her home in another state and moved to San Francisco in 2020 to be near Barrager, who would be her caretaker. She had heart problems, was at risk for strokes, and was soon to have a hip replacement.

this agreement." He also attached a diagram indicating that DeCarava rented one of the four bedrooms on the third floor, and had access to a shared stairway, hall, kitchen, and bathroom.

According to Barrager's declaration, on two occasions in August, he entered the house and DeCarava used her body to obstruct his movement. She followed him as he walked in shared space on the third floor, and followed him into a room on the third floor that was his space, not shared space. She called the police both times. Barrager's son was present on one occasion, and made a video recording that shows DeCarava following Barrager down the shared hallway, into the shared bathroom, and into a bedroom that is not hers. Stills from the video were attached to the petition.

Barrager also stated that on September 1, DeCarava hired a "handyman" to construct a new keyed door at the top of the stairs on the third floor; the door was constructed "surreptitiously," without a permit, and without his consent. When Barrager objected, the handyman insulted him, moved toward him and threatened to punch him in the face. Barrager's mother called the police, and a copy of the police report was attached to the petition, along with a photograph of DeCarava and the handyman outside the building.

The court denied Barrager's request for a temporary restraining order and set the matter for a hearing on November 5, at the same time as the hearing on DeCarava's petition.

C.    *Hearing*

DeCarava and Barrager represented themselves at the November 5 hearing.

At the beginning of the hearing, the court stated it had reviewed both matters, and that while Barrager had "a lot of support for his . . . allegations,"

5

it appeared that DeCarava had "misle[ ]d the court and been deceptive." Addressing DeCarava, the court said, "You represented that . . . the apartment on the third floor was yours. You do not have an apartment on the third floor. You have . . . a room. And then there are two or three other rooms that are the . . . space of the owner of the property, and Mr. Barrager is the owner of the property with his elderly mother. . . . [¶] So the Court was under the impression that you had your own apartment on the third floor and that they were coming up. You led the Court to believe that Mr. Barrager came into your apartment while you were asleep and that you woke up and saw him there and he had no reason to be there so it was frightening to you. [¶] Then you said he followed you toward your room. He was where he had a right to be. He's the owner. He has a right to be in that area—in the common area. You also put up a door leading to that floor so that you would have the lock to it and no one else. You didn't have a right to do that."

The court continued, "[T]here's a letter from the planning department . . . that verifies that indeed you have a room . . . and that the other rooms belong to the person . . . who you convinced the Court to get the TRO from.[3] [¶] . . . It says that you were at an appellate hearing and . . . you acknowledged that you knew that the third floor, that you just had a room. They also say that you put up that door without a permit. [¶] You tried to prevent the owner from coming up to his own floor and you led the Court to believe that it was yours . . . . Anybody would presume from what you said that you had the whole apartment on the third floor. That's what you

_____

   [3] In his response to DeCarava's petition, Barrager states that he is attaching confirmation from Kelly Wong of the planning department that DeCarava rents one room. This is presumably the document that the court refers to, but the copy of Barrager's response that DeCarava appended to her brief does not include any attachments.

6

represented." The court stated that by putting up a door blocking access to the third floor, DeCarava appeared to "try[ ] to commandeer the whole area."

DeCarava then testified that in 2014 she "rented the third-floor apartment including a private room with co-tenants . . . . At that time, I was given the apartment to rent as a shared apartment with three other co-tenants." She contended that Barrager had no right to be on the third floor and his presence was harassing, because she was "a lawful tenant in the third-floor apartment, renting that apartment, and I have been the sole tenant since August 2018." She stated that according to the 2014 lease agreement, "the third-floor apartment is my apartment."

DeCarava brought documents to the hearing that she had not previously submitted to the court. The court observed that DeCarava had "a stack of documents," stated that it could not review them all, and asked DeCarava what was in them and what evidence DeCarava had of harassment by Barrager. When DeCarava said she had evidence that Barrager had harassed, intimidated, and physically threatened her, the court instructed DeCarava not to "use conclusions" but to provide evidence. The court asked, "[D]o you have a letter from him calling you names, cussing you out; what do you have." DeCarava said she had "four notices to vacate despite . . . being in good standing with the landlord" and her lease agreement. The court reviewed the lease agreement.

In claiming that the third floor was her apartment, DeCarava relied on the first clause on what she called "the second page of the lease." That page was a document that DeCarava had attached to a copy of the one-page 2014 Residential Tenancy Agreement. The attachment was entitled "Oral Terms of Lease Agreement Between Laura Douglass DeCarava ('Tenant') and Feng Yuan Li & Yi Hua Hu ('Landlord') for 1374 46th Avenue—Apartment 4 3rd

Floor, Made Contemporaneous to Written Lease Agreement of April 2, 2014." Item one of the attachment states, "Tenant rents the 3rd Floor Unit including the kitchen, cooking services, common area, bathroom as well as a private bedroom (#4) and takes possession of the 3rd floor at the exclusion of the Landlord and others." DeCarava also relied on the attachment to support her claim that her lease included a parking space, pointing to a clause stating, "Tenant rents and has access to and use of a parking space." The attachment is dated December 24, 2019, and, as the court observed, it is signed by DeCarava and no one else.

Barrager testified that DeCarava created the 2019 attachment to the lease agreement, and that the people identified as landlords on the attachment denied that the purported oral agreements were ever made. He stated that the operative agreement was the one-page 2014-2015 Residential Tenancy Agreement, which he had submitted to the court, and which stated that DeCarava rented bedroom number 4 on the third floor.

In addition to the lease agreement, DeCarava presented the court with a series of text messages, which, she contended, showed that she had rented the third-floor apartment. The court reviewed them and observed that in the text messages DeCarava claimed that the entire third floor was her space; DeCarava agreed that was what she was claiming. The court also observed that although Barrager's responses suggested he did not agree with DeCarava, the court saw nothing harassing in the messages.

The court again asked DeCarava for proof of harassment, and asked whether she had texts or other writings in which Barrager threatened or pictures in which he attacked her in any way. DeCarava said Barrager had entered her unit and physically threatened her and that she had no threatening text messages. DeCarava gave the court a paper showing that

8

she contested a three-day notice that Barrager had put on her door; the court returned the document to DeCarava, stating that the document showed that DeCarava contested the notice, but provided no proof of harassment. At several points in the hearing, the trial court noted that it appeared that DeCarava and Barrager had a landlord-tenant dispute, which was not before the court in the expedited civil harassment hearing that was in progress.

Once again the court asked DeCarava for evidence of harassment. DeCarava stated that Barrager harassed her by virtue of his "unlawful entry into my apartment" and showed the court photographs from August 4 and August 21, which showed people wearing face masks, and videos from August 21, which the court reviewed. One of the videos showed Barrager talking to a police officer, but the court could not tell what was being said.

Barrager testified that in one of the August 21 videos he was checking the rooms on the third floor and opening the windows to air them out. Barrager testified that he did not live on the third floor of the house, but he needed to be able to access the three bedrooms that DeCarava did not occupy. He testified that he could rent those rooms out to other people if he chose, but he chose not to do so in 2020 because of COVID, and more recently chose not to rent them out because he saw DeCarava as a threat and was concerned that other tenants might be harmed. He testified that he had not harassed DeCarava, but she had harassed him, including by telling him to vacate her parking spot. He testified that the lease did not entitle her to a parking spot, and that the 2019 document on which DeCarava relied for her claim to the space was "pure perjury."

Barrager also testified that DeCarava had demanded 24 hours' notice before he entered the third floor. Although he gave her notice one time, he told her notice wasn't required because three of the rooms were his and there

9

was also shared space. When he went to the third floor, DeCarava confronted him and harassed him by blocking his path until he left and calling the police, which frightened him. Then, she installed a physical barrier to keep him out of the third floor.

After hearing testimony from DeCarava and Barrager, the court asked whether either of them had come with witnesses to corroborate their positions. DeCarava stated she had not; Barrager stated that his mother was present and that he also had a video. By this time, the hearing had lasted almost an hour. The court agreed to watch part of the video, which Barrager stated was from August 4. The court then admitted into evidence the exhibits that it had reviewed.

The court concluded that DeCarava rented a room on the third floor of the house and had access to shared space on that floor, and that except for her private room, the other space belonged to the owners to use as they saw fit. The temporary restraining order against Barrager was dissolved and the court dismissed DeCarava's petition with prejudice. The court granted Barrager's petition, and issued a restraining order against DeCarava that expires in November 2024.

DeCarava timely appealed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

Section 527.6 of the Code of Civil Procedure[4] governs the issuance of temporary restraining orders and orders after hearing that prohibit harassment, defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no

---

[4] Statutory references are to the Code of Civil Procedure.

10

legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  (§ 527.6, subd. (b)(3).)

A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email.  Constitutionally protected activity is not included within the meaning of 'course of conduct.' "  (§ 527.6, subd. (b)(1).)

At a hearing on a civil harassment restraining order, the court "shall receive any testimony that is relevant and may make an independent inquiry."  (§ 527.6, subd. (i).)  "If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment."  (*Ibid.*)  An injunction that restrains future conduct is authorized only if it appears that harassment is likely to recur.  (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 402.)

In an appeal from the grant or denial of a civil harassment restraining order, we apply the substantial evidence test in evaluating the trial court's express and implied findings.  (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.)  We do not consider whether there might be substantial evidence to support a finding different from the trial court's, but only whether there is substantial evidence, contradicted or uncontradicted, to support the findings that were made. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581-582.)  We draw all reasonable inferences to affirm the trial court, and we do not reweigh the evidence or reappraise the credibility of witnesses.  (*Ibid.*)

11

B.    *Principles of Appellate Review*

Before turning to DeCarava's arguments, we summarize standards that apply to appeals where parties represent themselves, as the parties do here, as well as to appeals where parties are represented by counsel. (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210 [self-represented litigant is "treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys"].)

An order challenged on appeal is presumed to be correct, and it is the appellant's burden to affirmatively show that the trial court erred. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is also the appellant's burden to show prejudice from any error. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) An appellant must "present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656, citing Cal. Rules of Court, rule 8.204(a)(1)(B).)

An appellant must provide the court with an adequate record for review; an appellant's failure to do so requires us to affirm the trial court's ruling. (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.) The appellant's opening brief must include a summary of significant facts limited to matters in the record and supported by citations to the relevant page number of the record. (Cal. Rules of Court, rule 8.204(a)(1)(C) & (a)(2)(C).) We are not required to search the record for evidence, and we disregard unsupported factual assertions. (*Air Couriers International v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 928 (*Air Couriers*).) In a substantial evidence challenge, the appellant must set forth in the opening brief all the material evidence on the challenged points, not just the evidence

12

favorable to appellant.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark*).)  Failure to meet this burden forfeits the claim on appeal.  (*Ibid.*)

We generally do not consider theories raised for the first time on appeal which could have been, but were not, presented to the trial court for consideration.  (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695 (*Nassimi*).)  The policy behind this rule is fairness.  " ' "[I]t would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal." ' "  (*Ibid.*)

C.    *Appellant's Arguments*

As reflected in the headings of her opening brief, DeCarava raises three arguments on appeal.  Two of the headings concern the trial court's denial of her petition:  "The trial court erred when it dismissed appellant's petition with prejudice and when the request for a restraining order was made on an emergency basis," and "The trial court erred by excluding evidence probative to appellant's petition."  The third heading concerns the court's granting of Barrager's petition:  "The trial court erred by granting respondent a permanent rest[r]aining order based upon discriminatory and retaliatory claims."

1.    *Exclusion of Evidence*

We begin with DeCarava's arguments concerning the exclusion of evidence, which appear under both of the headings that introduce DeCarava's claims that it was error to deny her petition.  DeCarava contends that the court improperly excluded documentary evidence that she offered at the hearing.  But DeCarava has not shown that the material at issue was ever offered to the trial court.  In her designation of the record on appeal, DeCarava described 12 numbered exhibits that she had purportedly brought

13

to the trial court, and noted that four of them had been received into evidence and eight had not. In her brief, DeCarava claims that as many as 18 separate exhibits were excluded from evidence at the hearing. DeCarava refers us to numbered exhibits that are attached to her opening brief, but offers no correlation between the numbers assigned to the attachments and the numbers in her designation of record. Nor do the descriptions provided in the brief's table of exhibits correspond to the descriptions in the designation of record. It is not our task to sort through the 31 exhibits attached to the opening brief, and try to determine which of them might correspond to documents DeCarava tried to present to the trial court. It is DeCarava's burden as appellant to provide this court with an adequate record to support her claim of error. Because DeCarava has not done this, we disregard her claim. (*Air Couriers*, *supra*, 150 Cal.App.4th at p. 928.)

In any event, DeCarava has not shown that the exhibits she describes in her brief would constitute clear and convincing evidence that Barrager had harassed her. DeCarava's primary argument is that the excluded exhibits would have shown that on multiple occasions Barrager came onto the third floor of the house without her permission and in so doing harassed her by unauthorized entry to her apartment. The trial court, however, found that DeCarava had not shown by clear and convincing evidence that the third floor of the house was her private apartment, except for room #4. Therefore, she had not shown by clear and convincing evidence that Barrager's presence on the third floor constituted unauthorized entry to DeCarava's private space. DeCarava insists that the third floor is her apartment under "a valid written and oral 2014 Lease Agreement," but the trial court found otherwise, based on its review of the written lease agreement and a document from the City of San Francisco that was attached to Barrager's response to her petition

14

but is not included in the record or in DeCarava's exhibits. To the extent DeCarava challenges the court's finding, the challenge must fail because we review the trial court's findings for substantial evidence, and DeCarava has not provided all the relevant evidence. (*Foreman & Clark*, *supra*, 3 Cal.3d at p. 881.) In particular, she has not included Barrager's response to her petition in the Clerk's Transcript. Further, the court was not required to believe that the document dated December 24, 2019, that DeCarava had attached to her copy of the lease represented agreements that DeCarava had reached with the former owners of the building, despite DeCarava's statement in the document that it reflected the "oral terms" of her lease agreement.

And to the extent DeCarava suggests that she could have provided evidence that Barrager harassed her by posting on her door three-day notices to quit based on allegedly false grounds, the argument is not persuasive because DeCarava cites no authority holding that the posting of such notice in the circumstances here constitutes "harassment" under section 527.6, subdivision (b)(3). In any event, DeCarava informed the trial court of the notices to quit, and the trial court was aware that DeCarava characterized the notices as attempted wrongful eviction, so DeCarava cannot show that she was prejudiced by the exclusion from evidence of the documents associated with the notices.

DeCarava claims that Barrager harassed her by engaging in stalking behaviors, making verbal threats to harm her, and targeting her with "verbal and physical threats and threatening actions." She provided no documentary evidence to support these claims at the November 5 hearing, despite repeated requests from the trial court. The court reviewed photographs, videos, and

15

text messages, and found no evidence that Barrager had harassed DeCarava. On the record before us, DeCarava has not shown that the trial court erred.

2. *Dismissal of Petition Brought on an Emergency Basis*

DeCarava argues that because she sought a restraining order "on an emergency basis," it was error for the court to dismiss her petition. The fact that the petition for civil restraining order might have been brought on an emergency basis has nothing to do with the denial of a petition after hearing, which is the procedural posture here. As authorized by section 527.6, the trial court issued a temporary restraining order the day after DeCarava filed her petition, and then held a hearing to determine whether a further order should be granted. (§ 527.6, subds. (c)-(i).)

The bulk of the argument in DeCarava's opening brief on appeal consists of DeCarava's account of proceedings before the San Francisco Planning Department regarding the house and apartments within it, apparently going back before May 2020, and her account of her interactions with Barrager starting in September 2020. Because the argument rests largely on material outside the record, we disregard it. (*Air Couriers*, *supra*, 150 Cal.App.4th at p. 928.) To the extent DeCarava argues issues of landlord-tenant law, she raises issues that were not before the trial court and that cannot be resolved here.

As the trial court pointed out, final resolution of the dispute between DeCarava and Barrager concerning the terms of DeCarava's lease is a landlord-tenant matter. Restraining orders issued under section 527.6 cannot last longer than five years (§ 527.6, subd. (j)(1)), and therefore they cannot provide a conclusive determination of parties' rights to real property. Nor was section 527.6 intended to provide an expedited procedure for resolving such disputes. (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 810-

811.) Section 527.6 "was enacted to provide an expedited procedure for preventing 'harassment' as defined. . . . The statute was designed to provide a quick and simple procedure by which this type of wholly unjustifiable conduct, having no proper purpose could be enjoined." (*Id.* at p. 811.)

The issues before the trial court concerned whether there had been harassment as defined by section 527.6. Nothing in the trial court's decision forecloses either party from bringing an appropriate action in the appropriate forum to address their disputes over issues concerning DeCarava's tenancy.

3.      *Discrimination*

In addition to challenging the trial court's denial of her request for restraining orders, DeCarava argues that the trial court erred by granting Barrager a restraining order "based upon discriminatory and retaliatory claims." DeCarava's discussion of this issue is difficult to follow. To the extent DeCarava argues that Barrager's conduct constituted a violation of California civil rights laws, the issue is not before us, because it was not raised in the trial court. (*Nassimi, supra*, 3 Cal.App.5th at p. 695.)

## DISPOSITION

The challenged orders are affirmed. Respondent shall recover his costs on appeal.

17

_____

Miller, J.

WE CONCUR:

_____

Richman, Acting P.J.

_____

Markman, J.*

A164177, *DeCarava v. Barrager*

---

* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.