Filed 2/15/24  Quigley v. Bis Club & Bar CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| CAROLINA QUIGLEY et al., <br><br>      Plaintiffs and Respondents, <br><br> v. <br><br> BIS CLUB & BAR, INC. et al., <br><br>      Defendants and Appellants. | D082759 <br><br><br> (Super. Ct. No. RIC2001940) |

APPEAL from an order of the Superior Court of Riverside County, Carol A. Greene, Judge.  Reversed in part; affirmed in part; and remanded with directions.

Law Office of Randy K. Bell and Randy K. Bell for Defendants and Appellants.

Sahagun Law and Bryan Owens Sahagun for Plaintiffs and Respondents.

Defendants Bis Club & Bar, Inc. (Bis Club) and Guadalupe Arizpe Villavicencio (Villavicencio) (together Defendants) appeal an order denying in part their motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial after the trial court entered a judgment on a jury verdict in favor of plaintiffs Carolina Quigley and Veronica Maya (together Plaintiffs).  Following trial, the jury returned a special verdict finding

Defendants liable on Plaintiffs' causes of action for nonpayment of minimum wages, meal period violations, rest period violations, failure to provide itemized wage statements, failure to timely pay wages, sexual harassment (as to Maya only), failure to prevent sexual harassment, wrongful termination in violation of public policy, and sexual assault/battery (as to Maya only). The jury also awarded punitive damages to Plaintiffs.

On appeal, Defendants contend the trial court erred by denying in part their motion for JNOV on the following grounds: (1) duplicate damages were erroneously awarded to Maya; (2) there is insufficient evidence to support a finding of liability to Quigley for wrongful termination in violation of public policy; and (3) there is insufficient evidence to support the award of punitive damages to Maya. In addition to refuting those contentions, Plaintiffs assert, among other things, that we do not have jurisdiction to consider Defendants' appeal and the trial court did not have jurisdiction to consider Defendants' motion for JNOV.

As explained below, we conclude: (1) we have jurisdiction to consider this appeal; (2) the trial court had jurisdiction to consider the JNOV motion; (3) certain damages awarded to Maya were duplicative; (4) there is insufficient evidence to support the jury's finding for Quigley on her cause of action for wrongful termination in violation of public policy; and (5) Defendants waived or forfeited their contention that substantial evidence does not support the award of punitive damages to Maya. Accordingly, we reverse the order in part, affirm it in part, and remand with directions that the court vacate its order and issue a new order as specified below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Maya and Quigley filed an action against Defendants and testified at their trial.[1] Maya and Quigley testified that in late 2018, they were hired by Bis Club as waitresses and to perform other tasks. Bis Club is a bar that offers live music and dancing. Villavicencio was the owner of Bis Club. Joaquin Arizpe was its manager. Arizpe was also Villavicencio's former husband.

Villavicencio held employee meetings during which she discussed work duties, but also threatened employees, called them derogatory names, and warned them not to hang out with Arizpe. In particular, while looking toward Maya and Quigley, she stated: "The whore that may be going out with [Arizpe], and if I become aware of that, I'll pull her eyes out with these nails."

Shortly after Maya was hired, Arizpe began making harassing comments to her. He asked her why she did not wear less clothing and suggested that if she wanted more tips, she should wear a thong. He called Maya, "Mi pollo," which meant "my little chicken." About three times per month, Arizpe asked Maya for a hug or kiss. About three times per week, he asked Maya to go on a date with him. Maya never kissed him or went out on a date with him.

Arizpe also brushed his hands against Maya's breasts, rubbed his pelvis against her backside, and looked down her shirt as she leaned over. Maya did not consent to Arizpe's touching of her and repeatedly asked him to

---

[1] The record on appeal does not contain a copy of Plaintiffs' complaint.

stop it, but did not report it to Villavicencio. His actions made her feel sad, depressed, and uncomfortable.

At about 2:00 a.m. one night after all the customers had left, Maya was preparing to leave through the back door. Arizpe stopped her and asked her why she was going out that way because he had already closed that door. As Maya turned to head toward the front door, Arizpe slapped her on her buttock. Maya felt very sad, depressed, ashamed, and afraid after he slapped her. She told another employee what happened and then drove home.

Villavicencio called Maya at home soon after the slapping incident. She called Maya a "fucking bitch," stated that she knew Maya was the "whore" that was with Arizpe, and stated she did not want to see her or her sister (i.e., Quigley) again. When Maya tried to explain, Villavicencio stated she would send her the video.[2] She was not paid her final wages.

Quigley testified that Arizpe made sexual comments to her, asked her why she did not wear a thong and a bra, and stated he wanted to see more skin. He also asked her out on a date. She also testified that Arizpe brushed up against her bust, brushed his penis against her backside, and looked down her shirt. Although she confronted Arizpe regarding his conduct, she did not report it to Villavicencio. On November 9, 2019, Quigley received a text message from Villavicencio, calling her a "bitch" and stating: "I know that you're going out with [Arizpe]. Whore. . . . [¶] Your sister [i.e., Maya] is a whore. . . [¶] . . . I'm going to play that video for you. I don't want you to come into work anymore here. I don't want to see you again in my business." She was not paid her final wages.

---

[2]     Arizpe later sent Maya a copy of the video recording of the incident. That video recording was played for the jury during trial.

4

After Plaintiffs rested their case in chief, Defendants moved for a nonsuit on their causes of action for retaliation, sexual battery, and failure to prevent sexual harassment. The court granted the motion for nonsuit in part as to the retaliation causes of action, but denied the motion as to the other causes of action.

In their defense, Defendants presented the testimony of Arizpe, two other employees of Bis Club, and one of its customers. In particular, Arizpe testified that he maintained a binder (Exh. 21), in which he recorded the dates and hours that employees worked and the wages owed to those employees. He also recorded the sales of Bis Club. He testified that employees were paid weekly in cash. He testified that during employee meetings, Villavicencio did not threaten physical violence against employees or call them derogatory names. He also denied touching Quigley inappropriately or asking her out on a date. He testified regarding the incident during which he slapped Maya's buttock and believed that another employee had informed Villavicencio about it.

After the defense rested, the court read its jury instructions and gave the jury a special verdict form. After closing arguments, the jury deliberated and returned a special verdict form which, among other things, found Defendants liable to Plaintiffs for nonpayment of minimum wages, meal period violations, rest period violations, failure to provide itemized wage statements, failure to timely pay wages, sexual harassment (as to Maya only), failure to prevent sexual harassment, wrongful termination in violation of public policy, and sexual assault/battery (as to Maya only). The jury also found that: (1) Arizpe, as an officer, director, or managing agent of the Bis Club, engaged in sexual harassment against Maya with malice, oppression,

5

or fraud; (2) Arizpe or Villavicencio, as an officer, director, or managing agent of Bis Club, failed to prevent sexual harassment against Maya and Quigley with malice, oppression, or fraud; (3) Arizpe or Villavicencio, as an officer, director, or managing agent of Bis Club, wrongfully terminated Maya and Quigley in violation of public policy with malice, oppression, or fraud; and (4) Arizpe, as an officer, director, or managing agent of the Bis Club, sexually assaulted or battered Maya with malice, oppression, or fraud. In the second phase of the trial, the jury awarded Maya $8,000 and Quigley $2,000 in punitive damages against Defendants.

On February 1, 2022, the court entered a judgment against Defendants, jointly and severally, in favor of Maya in the total amount of $48,307.75, with interest until paid, and in favor of Quigley in the total amount of $19,378.70, with interest until paid.

On March 10, Defendants filed a notice of motion and motion for JNOV or, alternatively, a new trial on the grounds that: (1) the amount of damages awarded to Maya was excessive, inconsistent, and resulted in double or multiple recovery; (2) insufficient evidence supported their liability to Quigley for wrongful termination in violation of public policy; and (3) insufficient evidence supported the jury's awards of punitive damages. Plaintiffs opposed their motion. On May 9, after hearing arguments of counsel, the court issued a minute order denying the motion for new trial, denying in part the motion for JNOV, and granting in part the motion for JNOV as to the punitive damages awarded to Quigley.[3] Defendants timely appealed the May 9 order.

---

[3] The May 9, 2022 minute order stated that Defendants' motion for JNOV "is denied in part" and explained that the court was "inclined to grant the [JNOV motion] as to [Quigley] on punitive damages. To the extent there is any ambiguity in that order regarding the award of punitive damages to

6

DISCUSSION

I

*Jurisdiction to Consider This Appeal*

Plaintiffs argue that we lack jurisdiction to consider Defendants' appeal of the May 9, 2022 order because their notice of appeal challenged only the February 1 judgment and did not challenge the May 9 order.

A

On February 1, 2022, the trial court entered the judgment against Defendants. On February 23, Plaintiffs served a notice of entry of judgment on Defendants. On August 1, Defendants filed a notice of appeal challenging the February 1 judgment after jury trial and an order "under [Code of Civil Procedure], § 904.1(a)(3)-(13)." On August 18, Defendants filed their civil case information statement, which, among other things, attached a copy of the May 9 order. On November 22, the Fourth District Court of Appeal, Division Two, issued an order dismissing the appeal as untimely filed. On December 21, that court issued an order granting in part Defendants' motion to vacate its dismissal as to their appeal of the May 9 order and denying in part their motion to vacate its dismissal as to their appeal of the February 1 judgment. That order reinstated the appeal only as to the May 9 order. The order explained that Defendants had attached a copy of the May 9 order to their civil case information statement and the court liberally construed their notice of appeal to challenge both the February 1 judgment and May 9 order. Although their appeal of the February 1 judgment was untimely, their appeal

Quigley, we conclude the only reasonable interpretation of that order is that the court, in fact, granted in part Defendants' motion for JNOV as to the award of punitive damages to Quigley because that was the only action that the court took in granting in part their motion and "den[ying] in part" the remainder of their motion for JNOV.

7

of the May 9 order was timely filed within the applicable 180-day appeal period.  On September 23, 2023, the Supreme Court issued an order transferring this case to us from the Fourth District Court of Appeal, Division Two.

B

In arguing that Defendants' notice of appeal did not challenge the May 9 order, Plaintiffs omit any reference to the orders previously issued by the Fourth District Court of Appeal, Division Two, in this case.  As discussed above, that court, in liberally construing the notice of appeal as required under California Rules of Court, rule 8.100(a)(2), concluded in its December 21, 2022 order that the notice of appeal challenged both the February 1 judgment and the May 9 order denying in part the motion for JNOV.

We agree with that court's conclusion.  First, although the notice of appeal did not expressly specify the date of the May 9 order, it checked boxes for appealing both the February 1 judgment and an order "under Code of Civil Procedure, § 904.1(a)(3)-(13)."  Second, to the extent the notice of appeal may have been ambiguous regarding the order being appealed, that ambiguity was clarified by Defendants' civil case information statement, which attached a copy of the May 9 order.

"The notice of appeal must be liberally construed.  The notice is sufficient if it identifies the particular judgment or order being appealed. . . ." (Cal. Rules of Court, rule 8.100(a)(2).)   Furthermore, "[o]nce a notice of appeal is timely filed, the liberal construction requirement compels a reviewing court to evaluate whether the notice, despite any technical defect, nonetheless served its basic function—to provide notice of who is seeking review of what order or judgment—so as to properly invoke appellate

8

jurisdiction." (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 883.) Notices of appeal are to be liberally construed as to protect the right of appeal if it is reasonably clear what the appellant was trying to appeal from and where the respondent could not possibly have been misled or prejudiced. (*Id*. at p. 882.) Here, we conclude, as did the Fourth District Court of Appeal, Division Two, that Defendants' notice of appeal sufficiently identified the May 9 order as being appealed and Plaintiffs have not shown they were misled or prejudiced by its omission of the specific date of its issuance. Therefore, we reject Plaintiffs' argument and instead conclude that we have jurisdiction to consider Defendants' appeal of the May 9 order.

II

*Trial Court's Jurisdiction to Consider Motion for JNOV*

Plaintiffs also contend that the trial court lacked jurisdiction to consider Defendants' motion for JNOV and therefore erred by denying their motion in part. In particular, they argue that Defendants failed to timely and properly serve a notice of intention to move for a new trial or JNOV, thereby depriving the court of jurisdiction to consider the motion.

A

As discussed above, after the court entered its judgment on February 1, 2022, Defendants filed a notice of motion and motion for JNOV or, alternatively, a new trial on March 10 on the grounds that: (1) the amount of damages awarded to Maya was excessive, inconsistent, and resulted in double or multiple recovery; (2) insufficient evidence supported their liability to Quigley for wrongful termination in violation of public policy; and (3) insufficient evidence supported the jury's awards of punitive damages.

9

On March 21, Plaintiffs filed their opposition to the motion. In particular, they argued, among other things, that the motion had not complied with procedural requirements, such as failing to provide a notice of intent, supporting affidavits, and appropriate grounds for relief. They also argued that Defendants had not given them notice as to what modified judgment they requested.

On March 22, Defendants' counsel, Randy K. Bell, submitted a declaration in support of the motion, which, among other things, attached as exhibits excerpts from Maya's deposition transcripts, copies of documents that she produced during discovery, Exhibit 21 (admitted at trial), and selected jury instructions given by the court. Thereafter, Plaintiffs objected to Bell's declaration as untimely filed (i.e., one day late) after the expiration of the 10-day period following the notice of intent, citing Code of Civil Procedure sections 629 and 659a[4].

On March 29, Defendants filed a reply to Plaintiffs' opposition, admitting their technical violations of procedural rules requiring a "notice of intention" to move for a new trial or JNOV and specification of grounds for a new trial, but arguing, among other things, that the court was not precluded by those violations from considering their motion and Plaintiffs were not prejudiced by them. Defendants also argued that the court could, and should, consider Bell's declaration despite the fact that it was filed one day late, arguing that case law has held that the 10-day deadline for filing affidavits is

[4]    All further statutory references are to the Code of Civil Procedure unless otherwise specified.

10

not jurisdictional and that Plaintiffs suffered no prejudice from their late filing.

On May 9, after hearing arguments of counsel, the court issued a minute order denying Defendants' motion for new trial, denying in part their motion for JNOV, and granting in part their motion for JNOV as to the punitive damages awarded to Quigley.[5]  In so doing, the court overruled Plaintiffs' objection to Bell's declaration.

B

Section 659, subdivision (a) provides:  "The party intending to move for a new trial shall file with the clerk and serve upon each adverse party a notice of his or her intention to move for a new trial, designating the grounds upon which the motion will be made and whether the same will be made upon affidavits or the minutes of the court, or both, either: [¶] (1) After the decision is rendered and before entry of judgment. [¶] (2) Within 15 days of the date of mailing notice of entry of judgment by the clerk of the court pursuant to Section 664.5, or service upon him or her by any party of written notice of entry of judgment . . . , whichever is earliest. . . ."  The deadlines in section 659, subdivision (a)(1) and (2) "shall not be extended by order or stipulation . . . ."  (§ 659, subd. (b).)  Section 629, subdivision (b) provides in part:  "A motion for [JNOV] shall be made within the period specified in Section 659 for the filing and service of a notice of intention to move for a new trial."

Regarding affidavits and other supporting papers, section 659a provides:  "Within 10 days of filing the notice, the moving party shall serve upon all other parties and file any brief and accompanying documents,

<hr/>

[5]    The record on appeal does not contain the reporter's transcript from the May 9, 2022 hearing.

11

including affidavits in support of the motion. . . . These deadlines may, for good cause shown by affidavit or by written stipulation of the parties, be extended by any judge for an additional period not to exceed 10 days."

"As a general rule, the trial court may consider only the grounds stated in the notice of motion. [Citations.] An omission in the notice may be overlooked if the supporting papers make clear the grounds for the relief sought. [Citations.] The purpose of these requirements is to cause the moving party to 'sufficiently define the issues for the information and attention of the adverse party and the court.' [Citation.]" (*Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1125 (*Luri*).) "Even though the notice of motion fails to state a particular ground for the motion, where the notice states . . . that the motion is being made upon the notice of motion and accompanying papers and the record, and these papers and the record support that particular ground, *the matter is properly before the court and the defect in the notice of motion should be disregarded*." (*Carrasco v. Craft* (1985) 164 Cal.App.3d 796, 808 (*Carrasco*), italics added.)

"[T]he trial court loses jurisdiction to hear a new trial motion if no notice of intent is filed within 15 days of the mailing or service of notice of entry of judgment . . . . (§ 659 subd. (b); [citations].) . . . [¶] By contrast, the Courts of Appeal have consistently held that the 10-day deadline for the filing of affidavits is not jurisdictional. A court may retroactively extend the [section 659a] deadline for filing to the full 30-day period even if the party did not seek an extension in advance." (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 337 (*Kabran*).)

## C

Although Defendants did not file with the trial court a document entitled "Notice of Intention" in compliance with section 659, subdivision (a),

their notice of motion and motion for JNOV or, alternatively, a new trial had the effect of providing Plaintiffs with notice of their intention to file their motion and the specific grounds on which Defendants sought their relief. In particular, as Defendants argue, their notice of motion and motion for JNOV or, alternatively, a new trial included a memorandum setting forth their specific grounds and arguments thereon in support of their motion. In so doing, Defendants sufficiently defined for Plaintiffs and the court all of the specific grounds and issues on which they sought relief. (Cf. *Luri, supra*, 107 Cal.App.4th at p. 1125.) Accordingly, we conclude, as the trial court presumably did, that Defendants substantively complied with section 659, subdivision (a) and, contrary to Plaintiffs' argument, their due process right to notice was not violated. To conclude otherwise, would be to favor form over substance, which the law generally does not condone. (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1332–1333 [doctrine of substantial compliance gives effect to our preference for substance over form].) Therefore, we conclude that Defendants' motion was "properly before the [trial] court and [any] defect in the notice of motion should be disregarded." (Cf. *Carrasco, supra*, 164 Cal.App.3d at p. 808.) Plaintiffs have not cited any case or other authority showing otherwise, nor have they persuaded us that the trial court lacked jurisdiction to consider Defendants' motion in the circumstances of this case or that their due process right to notice was violated.

Furthermore, contrary to Plaintiffs' argument, we conclude that the trial court did not err by overruling their objection to Bell's declaration. Although Bell's declaration was filed one day after the expiration of the 10-day period under section 659a, the court had the authority to extend that 10-day period. (*Kabran, supra*, 2 Cal.5th at p. 337.) Plaintiffs do not

13

persuade us that the court abused its discretion by doing so in the circumstances of this case. Also, contrary to Plaintiffs' apparent assertion, Defendants' late filing of Bell's declaration did not deprive the trial court of jurisdiction to consider their motion. (*Ibid.*) Accordingly, we reject Plaintiffs' arguments that the trial court lacked jurisdiction to consider Defendants' motion for JNOV or, alternatively, a new trial and, based thereon, that we also lack jurisdiction to consider Defendants' appeal of the May 9, 2022 order.

III

*Duplicative Awards of Damages*

Defendants contend that the trial court erred by denying in part their motion for JNOV and, in particular, failing to find that certain awards of damages to Maya were duplicative.

A

The trial court instructed the jury, among other things, with CACI 3934 regarding damages on multiple legal theories, as follows:

> "Carolina Quigley and Veronica Maya seek damages from Bis Club and Bar under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

> "You will be asked to decide whether Bis Club and Bar is liable to Carolina Quigley and Veronica Maya under the following legal theories: [¶] . . . [¶]

> "6. Gender Based Harassment;

> "7. Failure to Prevent Gender Based Harassment;

> "8. Wrongful Termination;

> "9. Sexual Assault.

> "The following items of damages are recoverable only once under all of the above legal theories:

> "1. Lost income from time of termination until trial;

14

"2. Lost future income;

"3. Emotional Distress. . . ."

In its special verdict, the jury awarded Maya, among other things, the following damages on her causes of action for sexual harassment, failure to prevent sexual harassment, wrongful termination in violation of public policy, and sexual assault/battery:

1. Sexual harassment:

   a. Past lost earnings          $3,194.40

   b. Future lost earnings        $0

   c. Past emotional distress     $5,000.00

   d. Future emotional distress   $5,000.00

   Total:                         $13,194.40

2. Failure to prevent sexual harassment:

   a. Past lost earnings          $0

   b. Future lost earnings        $0

   c. Past emotional distress     $5,000.00

   d. Future emotional distress   $0

   Total:                         $5,000.00

3. Wrongful termination:

   a. Past lost earnings          $3,194.40

   b. Future lost earnings        $0

   c. Past emotional distress     $5,000.00

   d. Future emotional distress   $0

   Total:                         $8,194.40

4. Sexual assault/battery:

   a. Past lost earnings          $0

   b. Future lost earnings        $0

15

|  |  |  |
| --- | --- | --- |
| c. | Past emotional distress | $2,500.00 |
| d. | Future emotional distress | $2,500.00 |
|  | Total: | $5,000.00 |

In its judgment on the verdict, the trial court presumably included each amount of the above damages awarded by the jury in calculating its total amount of damages awarded to Maya of $48,307.75.

In their motion for JNOV, Defendants argued, among other things, that the amount of damages awarded to Maya was excessive, inconsistent, and resulted in double or multiple recovery. They requested that the court modify the damages awarded to Maya for her emotional distress and loss of earnings based on the evidence and jury instructions. They argued that the special verdict form did not ask the jury to state the total amount of damages it awarded to Maya and that the judgment added up all of the separate damage awards despite their overlap with each other. Defendants argued that the court should correct the jury's duplicate awards of damages to Maya and award her only $3,194.40 for past lost earnings, $5,000 for past emotional distress, and $5,000 for future emotional distress, for a total amount of $13,194.40 (in addition to her wage and hour damages). They argued the court should therefore modify the judgment to award Maya total damages of only $22,113.35.

In its May 9, 2022 order, the court rejected Defendants' argument and did not reduce the amounts of damages awarded to Maya.

B

In general, a plaintiff "is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. [Citation.] Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited." (*Tavaglione v.*

16

*Billings* (1993) 4 Cal.4th 1150, 1158–1159 (*Tavaglione*).)  However, "*where separate items of compensable damage are shown by distinct and independent evidence, the plaintiff is entitled to recover the entire amount of his damages, whether that amount is expressed by the jury* in a single verdict or *multiple verdicts referring to different claims or legal theories*." (*Id.* at p. 1159, italics added.)  In the circumstances of *Tavaglione*, the court stated:  "[A]s a matter of logic, it would seem unlikely that plaintiff's damages from being *defamed* by defendants would be identical to the damages he incurred from being *ousted* from RNB's board of directors. . . .  [T]hese theories of recovery seem based on different 'primary' rights and duties of the parties." (*Id.* at p. 1158.)  In *Ruby v. McKesson Corp.* (2009) 47 Cal.4th 686 (*Ruby*), the court concluded in the circumstances of its case that a court's addition of several individual awards of noneconomic damages "could only be justified if the awards of noneconomic damages for each of the three termination-related causes of action were all mutually exclusive.  If they overlapped in part, then, to the extent of the overlap, adding the awards together had the effect of compensating [the plaintiff] multiple times for the *same injury*." (*Id.* at p. 703, italics added.)

In *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788 (*Boeken*), the court discussed the "primary rights" theory in the context of the doctrine of res judicata, stating:  "The cause of action is the right to obtain redress *for a harm suffered, regardless of the* specific remedy sought or *legal theory* (common law or statutory) *advanced*." (*Id.* at p. 798, italics added.)  "Thus, under the primary rights theory, the determinative factor is the *harm suffered*.  When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Ibid.*, italics added.)

17

On appeal, in determining whether a trial court erred by denying a motion for JNOV, we review the record on appeal and generally uphold the court's decision if there is substantial evidence to support the jury's verdict. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770; *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) However, where an appellant challenges a trial court's denial of its motion for JNOV on the grounds of inconsistency of a special verdict, we review that verdict de novo and independently determine that question. (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092.) When two questions in a special verdict are patently inconsistent (i.e., inconsistency is "apparent on the face of the verdict"), we do not infer that the jury made findings in favor of the prevailing party and do not presume the verdict is correct. (*Id.* at pp. 1092–1093.) Nevertheless, we "will interpret the verdict if it is possible to give a correct interpretation," but will reverse the verdict if it is "hopelessly ambiguous." (*Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 457 (*Woodcock*).) If a verdict is not hopelessly ambiguous, we may " 'interpret the verdict from its language considered in connection with the pleadings, evidence and instructions.' " (*Id.* at pp. 456–457.)

C

Defendants argue that the jury's awards of damages to Maya for past lost earnings and emotional distress on her causes of action for sexual harassment, failure to prevent sexual harassment, wrongful termination in violation of public policy, and sexual assault/battery were duplicative and, in so arguing, implicitly argue those damages were awarded by the jury for the same injury or harm suffered. (*Tavaglione*, *supra*, 4 Cal.4th at pp. 1158–1159; *Ruby*, *supra*, 47 Cal.4th at p. 703; *Boeken*, *supra*, 48 Cal.4th at p. 798.) However, as discussed above, under the "primary rights" theory, a plaintiff

18

may seek recovery of compensation for a harm suffered, regardless of the specific legal theory advanced by the plaintiff. (*Tavaglione*, at pp. 1158–1159; *Boeken*, at p. 798.) It is only when a plaintiff seeks, or the jury awards, multiple damages for the same harm or injury does the rule against duplicate awards of damages apply. (*Tavaglione*, at pp. 1158–1159; *Ruby*, at p. 703.)

On appeal, we must interpret the jury's special verdict "if it is possible to give a correct interpretation." (*Woodcock*, *supra*, 69 Cal.2d at p. 457.) In so interpreting the jury's special verdict and the record on appeal, we conclude that, with two exceptions, the jury awarded Maya different awards of damages for different injuries or harms that she suffered relating to the four causes of action in question.

*Duplicate damages*. First, we conclude that the jury's verdict awarded Maya duplicate damages for past emotional distress on her causes of action for sexual harassment and failure to prevent sexual harassment. As described above, Maya testified regarding the verbal and physical sexual harassment by Arizpe that she suffered while working for Defendants. She also testified that his actions made her feel sad, depressed, and uncomfortable. Given that evidence, the jury found that Maya had suffered emotional distress from that sexual harassment up until the time her employment was terminated by Villavicencio and awarded her $5,000 in damages for that past emotional distress.

On her related cause of action, the jury also awarded Maya $5,000 in damages for past emotional distress caused by Defendants' failure to prevent sexual harassment. However, our review of the record does not show, nor do Plaintiffs cite, any evidence showing that the emotional distress that Maya suffered from Defendants' failure to prevent sexual harassment while working for them was any different from the emotional distress caused by the

19

actual sexual harassment that she suffered while working for them. Accordingly, we conclude that the record shows that the sexual harassment shown in support of both causes of action was, in fact, the same sexual harassment or, as described above, the same harm or injury (i.e., involved the same "primary right"). Therefore, the jury's award of $5,000 in damages awarded to Maya for past emotional distress on her cause of action for failure to prevent sexual harassment was, as Defendants argue, the same compensation for the same harm and thus an award of *duplicate damages* in addition to the award of $5,000 in damages on her cause of action for sexual harassment. (*Tavaglione*, *supra*, 4 Cal.4th at pp. 1158–1159; *Ruby*, *supra*, 47 Cal.4th at p. 703.) Accordingly, to the extent the trial court denied in part Defendants' motion for JNOV as to the judgment's award of those duplicate damages, it erred. Instead, the court should have stricken as duplicative the $5,000 award of damages to Maya for past emotional distress for Defendants' failure to prevent sexual harassment.

Second, we conclude, as Defendants argue, that the jury's award of past lost earnings in the amount of $3,194.40 on each of her causes of action for sexual harassment and wrongful termination in violation of public policy represented the *same lost earnings* and thus the same harm or injury under the "primary rights" theory. Our review of the record does not show, nor do Plaintiffs cite, any evidence showing that the past lost earnings that Maya suffered from Defendants' sexual harassment of her were any different from the past lost earnings that she suffered from their wrongful termination of her. Because the record shows that the $3,194.40 amount of past lost earnings shown in support of both causes of action were, in fact, the same past lost earnings (i.e., the same harm or injury), the jury's award of $3,194.40 in damages to Maya for past lost earnings on her cause of action for

20

wrongful termination was the same compensation for the same harm and thus an award of *duplicate damages* in addition to the award of $3,194.40 in damages for past lost earnings on her cause of action for sexual harassment. (*Tavaglione*, *supra*, 4 Cal.4th at pp. 1158–1159; *Ruby*, *supra*, 47 Cal.4th at p. 703.) Accordingly, to the extent the trial court denied in part Defendants' motion for JNOV as to the judgment's award of those duplicate damages, it erred. Instead, the court should have stricken as duplicative the $3,194.40 award of damages to Maya for past lost earnings for Defendants' wrongful termination in violation of public policy.

*Nonduplicate damages.* Contrary to Defendants' argument, we conclude that the jury's other awards to Maya of damages for past and future emotional distress are not duplicative. Specifically, the jury awarded to Maya: (1) $5,000 for past emotional distress on her cause of action for sexual harassment; (2) $5,000 for future emotional distress on her cause of action for sexual harassment; (3) $5,000 for past emotional distress on her cause of action for wrongful termination in violation of public policy; (4) $2,500 for past emotional distress on her cause of action for sexual assault/battery; and (5) $2,500 for future emotional distress on her cause of action for sexual assault/battery.

Regarding the awards for her future emotional distress (i.e., $5,000 for her sexual harassment claim and $2,500 for her sexual assault/battery claim), we interpret the jury's verdict as correctly awarding her separate damages for separate harms or injuries that she suffered. (*Woodcock*, *supra*, 69 Cal.2d at p. 457.) Contrary to Defendants' apparent assertion, the jury's special verdict was not patently inconsistent in awarding those two amounts of damages. Therefore, we interpret its special verdict in a manner to support its correctness. (*Ibid*.) Based on our review of the record, we

21

conclude that there is substantial evidence to support findings by the jury that Maya will suffer future emotional distress from the sexual harassment that she generally suffered while working for Defendants and separate future emotional distress from the sexual assault/battery that Arizpe inflicted on her (i.e., slapping her buttock). Also, because the jury awarded Maya different amounts of damages for future emotional distress (i.e., $5,000 versus $2,500), we conclude the jury necessarily found that the future emotional distress that she would suffer on those two causes of action to be *different* future harms or injuries. Accordingly, we conclude that the jury's awards to Maya of damages for future emotional distress on those two causes of action are not duplicative. (Cf. *Tavaglione, supra*, 4 Cal.4th at p. 1158.)

Regarding the three awards of damages for her past emotional distress (i.e., $5,000 on her cause of action for sexual harassment, $5,000 on her cause of action for wrongful termination, and $2,500 on her cause of action for sexual assault/battery), we conclude that those awards are not duplicative of each other. Again, contrary to Defendants' apparent assertion, the jury's special verdict was not patently inconsistent in awarding those amounts of damages. Therefore, we interpret its special verdict in a manner to support its correctness. (*Woodcock, supra*, 69 Cal.2d at p. 457.) Based on our review of the record, we conclude those three awards for past emotional distress reflect the jury's compensation for *different* harms or injuries that she suffered.

Because the jury awarded Maya different amounts of damages for past emotional distress on her causes of action for sexual harassment and sexual assault/battery (i.e., $5,000 versus $2,500), we conclude the jury necessarily found that the past emotional distress that she suffered on those two causes of action to be *different* harms or injuries. As discussed above, Maya testified

22

that she felt sad, depressed, and uncomfortable when Arizpe sexually harassed her and felt very sad, depressed, ashamed, and afraid after Arizpe sexually assaulted or battered her by slapping her buttock. Construing the jury's verdict to give it a correct interpretation, we therefore conclude the jury found that the past emotional distress she generally suffered during the course of her employment by Defendants was different, and separate, from the emotional distress that she suffered from the single incident of sexual assault/battery when Arizpe slapped her buttock. (*Woodcock*, *supra*, 69 Cal.2d at p. 457.)

Similarly, we interpret the verdict in a manner such that the jury correctly found Maya's past emotional distress that she suffered from Villavicencio's termination of her was *different*, and separate, from her past emotional distress that she suffered from the other two causes of action for sexual harassment and sexual assault/battery. In particular, the jury could conclude that Maya suffered emotional distress from Arizpe's sexual harassment of her during the course of her employment, then suffered different, and separate, emotional distress from the single incident of Arizpe's sexual assault/battery of her, and finally suffered *different*, and separate, emotional distress from Villavicencio's wrongful termination of her after viewing the video recording of the incident. As discussed above, Maya testified that she felt sad, depressed, and uncomfortable when Arizpe sexually harassed her. Maya also testified that she felt very sad, depressed, ashamed, and afraid after Arizpe sexually assaulted or battered her by slapping her buttock. Although Maya did not expressly so testify, we conclude that the jury could reasonably infer that she was likewise sad and depressed when Villavicencio called her a "fucking bitch" and wrongfully terminated her employment. Accordingly, we conclude that the jury's awards

23

to Maya of damages for past emotional distress on her causes of action for sexual harassment, wrongful termination in violation of public policy, and sexual assault/battery are not duplicative. (Cf. *Tavaglione*, *supra*, 4 Cal.4th at p. 1158.) To the extent Defendants cite *Ruby* in support of their argument, we conclude that case is inapposite and therefore unpersuasive because, unlike this case, it involved three termination-related causes of action. (*Ruby*, *supra*, 47 Cal.4th at p. 703.) Therefore, the trial court did not err by denying in part Defendants' motion for JNOV as to the judgment's separate awards for past emotional distress on those causes of action, nor did it err by denying in part their motion for JNOV as to the judgment's separate awards for future emotional distress, as we concluded above.

D

To the extent Defendants argue the jury failed to correctly apply CACI No. 3934, quoted above, and/or correctly return its special verdict, we presume the jury followed the court's instructions and we also "interpret the verdict if it is possible to give it a correct interpretation." (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1223 [absent contrary indication, we presume jury followed instructions]; *Woodcock*, *supra*, 69 Cal.2d at p. 457 [interpret verdict if possible to be correct verdict].) In so doing, we conclude the jury properly applied CACI 3934 in awarding *separate*, and *not duplicative*, awards of damages for past and future emotional distress on Maya's causes of action for sexual harassment, wrongful termination in violation of public policy, and sexual assault/battery, as discussed above.

In support of their argument, Defendants also cite *Singh v. Southland Stone, USA, Inc.* (2010) 186 Cal.App.4th 338 (*Singh*), which suggested that trial courts should use jury instructions and special verdicts that do not ask

24

the jury to avoid awarding duplicate damages, but instead leave those issues of duplicate damages for resolution by the trial court after the jury returns its verdict. (*Id*. at pp. 360–361.) However, we are not persuaded that the trial court in this case erred by instructing with CACI No. 3934, instead of following *Singh*'s suggested approach, nor are we persuaded that the jury erred by following that instruction and awarding the nonduplicate damages discussed above. Furthermore, to the extent Defendants contend that CACI 3934 was misleading or otherwise erroneous, we conclude, as Plaintiffs argue, that they waived or forfeited any such instructional error by not objecting to that instruction or, at least, suggesting clarifying language. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130–1131 [appellant forfeits claim that jury instruction was too general, lacked clarity, or was incomplete unless it requested additional or clarifying instruction]; *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 856–857 [appellant waived jury instruction error by acquiescing to instruction].)

IV

*Quigley's Wrongful Termination Award*

Defendants contend that the trial court erred by denying in part their motion for JNOV on the ground that there was insufficient evidence to support a finding of liability to Quigley for wrongful termination in violation of public policy. In particular, they argue that there was insufficient evidence to support findings that Quigley reported to Defendants sexual harassment and that such reporting was a motivating reason for their termination of her employment.

25

## A

The trial court instructed with CACI 2430 on Quigley's cause of action for wrongful termination in violation of public policy, stating:

> "[Quigley claims she was] discharged from employment for reasons that violate a public policy.  It is a violation of public policy to discharge someone from employment for any of the following: (1) reporting the failure to pay proper minimum wage rates; (2) reporting the failure to provide meal periods; (3) reporting the failure to provide rest periods; [(4)] reporting sexual harassment; [(5)] being the victim of sexual harassment; [(6)] reporting sexual assault; or [(7)] being the victim of sexual assault.  To establish this claim, [Quigley] must prove all of the following:
>
> "1.  That [she was] employed by [Bis Club];
>
> "2.  That [Bis Club] discharged [her];
>
> "3.  That any one of the following: (1) reporting the failure to pay proper minimum wage rates; (2) reporting the failure to provide meal periods; (3) reporting the failure to provide rest periods; [(4)] *reporting sexual harassment*; [(5)] being the victim of sexual harassment; [(6)] reporting sexual assault; or [(7)] being the victim of sexual assault *was a motivating reason* for [her] discharge;
>
> "4.  That [she was] harmed; and
>
> "5.  That the discharge was a substantial factor in causing [her] harm."  (Italics added.)

The jury returned its special verdict, finding Defendants liable to Quigley for wrongful termination in violation of public policy and awarding her damages of $3,194.40 for past lost earnings and $5,000 for past emotional distress.

## B

"[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort

26

action and recover damages traditionally available in such actions." (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170.) "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship; (2) the employer terminated the plaintiff's employment; (3) the termination was *substantially motivated* by a violation of public policy; and (4) the discharge caused the plaintiff harm." (*You v. Allen* (2014) 229 Cal.App.4th 144, 154 (*You*), italics added.) Therefore, if the plaintiff does not present substantial evidence of an underlying violation of public policy that substantially motivated the employer's termination of his or her employment, there is insufficient evidence to support a jury's finding that the employer wrongfully terminated the plaintiff in violation of public policy. (*Ibid.*)

C

Here, the trial court granted Defendants' motion for a nonsuit on Quigley's causes of action for retaliation for reporting wage and hour violations and FEHA violations. In particular, the court noted that she had denied reporting to Villavicencio any sexual harassment by Arizpe. The court also noted that Quigley did not report any Labor Code wage and hour violations to Defendants or a public agency. The record shows that Quigley admitted she had not reported to Villavicencio the sexual harassment about which she had testified. She also admitted that she had not complained to either Villavicencio or Arizpe about her lack of rest periods or lunch breaks.[6]

---

[6] Although Quigley testified that she went to the sheriff's department and spoke with an officer there about Arizpe's conduct, we presume the jury did not find that testimony credible because it found that she had not been sexually harassed as she testified. Furthermore, although Quigley testified that she asked Arizpe to stop his comments and physical touching of her, the jury could likewise have found that testimony not credible.

27

In its special verdict, the jury found in favor of Defendants on Quigley's causes of action for sexual harassment and sexual assault/battery. Although the jury found Defendants liable on her cause of action for failure to prevent sexual harassment, that special verdict was later withdrawn by her counsel, conceding that it was inconsistent with the jury's verdict finding that she had not been sexually harassed. Furthermore, assuming arguendo that Quigley had, in fact, reported to Arizpe his sexual harassment of her, we nevertheless conclude that substantial evidence does not support a finding under CACI No. 2430 that such reporting to Arizpe was a "motivating reason" for Villavicencio's termination of her employment. In particular, the record does not contain any evidence that would support a reasonable inference that Arizpe informed Villavicencio about Quigley's assumed reporting to him of sexual harassment such that Quigley's reporting could have been a motivating reason for Villavicencio's termination of her employment. Rather, as shown by Maya's testimony regarding her phone conversation with Villavicencio and Quigley's testimony regarding Villavicencio's text message to her, Villavicencio was clearly upset when she heard about, and viewed the video recording of, Arizpe's slapping of Maya's buttock and that incident therefore was the motivating reason for Villavicencio's termination of Quigley's employment. Absent that required motivating reason for Defendants' termination of Quigley's employment, we conclude, as Defendants argue, that substantial evidence does not support the jury's finding for Quigley on her cause of action for wrongful termination in violation of public policy. (CACI No. 2430; *You*, *supra*, 229 Cal.App.4th at p. 154.) Plaintiffs do not persuade us to reach a contrary conclusion. Accordingly, the trial court erred by denying in part Defendants' motion for JNOV as to the jury's award of damages to Quigley on her cause of action for

28

wrongful termination in violation of public policy (i.e., $3,194.40 for past lost earnings and $5,000 for past emotional distress).

V

*Maya's Award of Punitive Damages*

Defendants contend that the trial court erred by denying in part their motion for JNOV on the ground that there was insufficient evidence to support the award of punitive damages to Maya.[7] In particular, they argue Exhibit 21 was insufficient evidence to show that they had the ability to pay the $8,000 in punitive damages awarded to her.

A

At trial, the court admitted in evidence Exhibit 21, which was a binder that Arizpe maintained and in which he recorded the dates and hours that employees worked, the wages owed to those employees, and the sales of Bis Club. Following the second phase of the trial, the jury returned a special verdict awarding Maya $8,000 and Quigley $2,000 in punitive damages.

The court entered a judgment against Defendants on the jury's special verdict, including awards of $8,000 to Maya and $2,000 to Quigley in punitive damages. The court denied in part Defendants' motion for JNOV, but granted it in part as to the $2,000 in punitive damages awarded to Quigley.

B

A plaintiff must present evidence of a defendant's financial condition as a prerequisite for an award of punitive damages. (*Adams v. Murakami* (1991) 54 Cal.3d 105, 108–109, 123 (*Adams*).) Absent such evidence, "the

---

[7] As we concluded above, we interpret the trial court's May 9, 2022 minute order as granting in part Defendants' motion for JNOV as to the award of $2,000 in punitive damages to Quigley. Therefore, our discussion in this section addresses only the $8,000 award of punitive damages to Maya.

award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone*." (*Id*. at p. 112.) However, *Adams* declined "to prescribe any rigid standard for measuring a defendant's ability to pay." (*Id*. at p. 116, fn. 7.) "The amount of punitive damages is determined in the discretion of the jury. An appellate court will not reverse the jury's determination unless the award as a matter of law is excessive or appears so grossly disproportionate to the relevant factors that it raises a presumption it was the result of passion or prejudice." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 623 (*Rufo*).)

"Although net worth is the most common measure of the defendant's financial condition, it is not the only measure for determining whether punitive damages are excessive in relation to that condition." (*Rufo*, *supra*, 86 Cal.App.4th at p. 624.) "Net worth is the most common measure, but not the exclusive measure [of a defendant's ability to pay punitive damages]. [Citations.] In most cases, evidence of earnings or profit alone are not sufficient 'without examining the liabilities side of the balance sheet.' [Citations.]" (*Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 680.) "Normally, evidence of liabilities should accompany evidence of assets, and evidence of expenses should accompany evidence of income." (*Ibid*.) "What is required is evidence of the defendant's ability to pay the damage award." (*Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1152.) "Evidence of a defendant's income, standing alone, is not 'meaningful evidence.' [Citation.]" (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 194.)

C

Although Defendants contend that substantial evidence does not show they had the ability to pay the $8,000 in punitive damages awarded to Maya by the jury, we conclude they have waived or forfeited that contention by not providing an adequate record on appeal. As Plaintiffs argue, Defendants failed to make the reporter's transcript for the second phase of the trial on punitive damages a part of the record on appeal. In arguing there is insufficient evidence to support the jury's award of punitive damages, Defendants wholly ignore the requirement that they provide a record on which we may conduct such a review. In *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121 (*Aguilar*), the Supreme Court stated: "[D]efendants must show that this finding [regarding ongoing conduct to justify injunctive relief] is not supported by substantial evidence. But, as noted above, defendants elected not to provide a reporter's transcript of the trial proceedings. Accordingly, they have no basis upon which to argue that the evidence adduced at trial was insufficient to support the trial court's finding that injunctive relief was necessary to prevent a continuation of defendants' unlawful conduct." (*Id.* at p. 132; see also, *Jameson v. Desta* (2018) 5 Cal.5th 594, 608 (*Jameson*) [lack of verbatim record of trial proceedings will frequently be fatal to litigant's ability to have appellate claims of error resolved by appellate court on the merits]; *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1363 (*Oliveira*) [judgment was affirmed because appellant failed to present adequate record for review].) In *LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044 (*LA Investments*), the court concluded that the appellants "failed to provide an adequate record for our substantial evidence review . . . for their assertion the evidence was

31

insufficient to support the jury's finding of malice. Consequently, the claim is waived, and we presume the record contains evidence to sustain the jury's finding of malice." (*Id*. at p. 1062.)

Here, because Defendants failed to provide a reporter's transcript for the second phase of the trial on punitive damages, we conclude they have not met their burden to provide an adequate record on appeal for us to evaluate their contention that substantial evidence does not support the punitive damages awarded by the jury in its special verdict and by the court in its judgment. (*Aguilar, supra*, 21 Cal.4th at p. 132; *Jameson, supra*, 5 Cal.5th at p. 608; *Oliveira, supra*, 206 CalApp.4th at p. 1362.) Alternatively stated, Defendants have waived or forfeited their substantial evidence contention by not providing an adequate record on appeal on which we may evaluate that contention. (*LA Investments, supra*, 75 Cal.App.5th at p. 1062.) Accordingly, we need not, and do not, address the merits of their contention that substantial evidence does not support the award of punitive damages to Maya.

## DISPOSITION

The order is reversed to the extent it denied in part the motion for JNOV as to the awards: (1) to Maya of $5,000 for past emotional distress on her cause of action for Defendants' failure to prevent sexual harassment and $3,194.40 to Maya for past lost earnings on her cause of action for wrongful termination in violation of public policy; and (2) to Quigley of $3,194.40 for past lost earnings and $5,000 for past emotional distress on her cause of action for wrongful termination in violation of public policy. In all other respects, the order is affirmed. The matter is remanded to the trial court with directions that it vacate its May 9, 2022 order and issue a new order reflecting its granting in part Defendants' motion for JNOV as to and striking

of: (1) the award to Quigley of $2,000 in punitive damages; (2) the award to Maya of $5,000 for past emotional distress on her cause of action for failure to prevent sexual harassment; (3) the award to Maya of $3,194.40 for past lost earnings on her cause of action for wrongful termination in violation of public policy; and (4) the awards to Quigley of $3,194.40 for past lost earnings and $5,000 for past emotional distress on her cause of action for wrongful termination in violation of public policy.  The parties shall bear their own costs on appeal.

KELETY, J.

WE CONCUR:


DATO, Acting P. J.


DO, J.

33